1

```
 1              IN THE UNITED STATES DISTRICT COURT
                      DISTRICT OF KANSAS
 2


 3
   THE UNITED STATES OF AMERICA,
 4
               Plaintiff,
 5
        vs.                          District Court
 6                                   Case Number
   PHILIP ANDRA GRIGSBY,             12-10174-01-JTM
 7

 8              Defendant.

 9

10                 TRANSCRIPT OF PROCEEDINGS

11         On the 15th day of November, 2012 came on to be
   heard in the CHANGE OF PLEA hearing in the
12 above-entitled and numbered cause before the
   HONORABLE J. THOMAS MARTEN, Judge of the United States
13 District Court for the District of Kansas, Sitting in
   Wichita.
14         Proceedings recorded by mechanical stenography.
           Transcript produced by computer.
15

16
   APPEARANCES
17
        The Plaintiff appeared by and through
18 Mr. Jason Hart, Assistant United States Attorney.

19      The Defendant appeared in person and by and
   through his attorney, Mr. John Henderson, Assistant
20 Federal Public Defender.

21

22

23

24

25
```

2

1                          INDEX

2
Reporter's Certificate                              45
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Proceedings commence at 1:30 p.m.)

 2              THE COURT:  Well, welcome back, folks.  We're

 3   here again on Case Number 12-10174-01, United States of

 4   America versus Philip Andra Grigsby.

 5              I note Mr. Hart here again for the Government;

 6   Mr. Henderson for Mr. Grigsby, who's also here

 7   personally.

 8              We are here now to take what I understand is a

 9   plea on each of the ten counts in the superseding

10   indictment, as well as to take up the forfeiture

11   allegations.

12              Are there any preliminary matters from the

13   Government, Mr. Hart?

14              MR. HART:  No, Your Honor.

15              THE COURT:  Mr. Henderson, from Mr. Grigsby?

16              MR. HENDERSON:  No, Your Honor.  Thank you.

17              THE COURT:  Thank you.

18              Well, sir, you are Philip -- is it Andra?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  Grigsby?

21              THE DEFENDANT:  Yes, Your Honor.

22              THE COURT:  Now, Mr. Grigsby, I am going to be

23   asking you some questions here this afternoon and it's

24   going to be done with you either under oath or upon

25   your affirmation to tell the truth; it's going to be
```

1  done on the record; and it's going to be done in the

2  presence of counsel.

3          Now, if at some point you change the

4  statements that you make here today, your statements

5  may be used against you in a prosecution for perjury or

6  for false statement.

7          Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And do you have any objection to

10 taking an oath, Mr. Grigsby?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  Are you ready to proceed?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Would you please stand, raise your

15 right hand.

16         And, Ms. Smith, if you would administer the

17 oath, please.

18         MS. SMITH:  You do solemnly swear that the

19 statements given in the Petition to Enter a Plea of

20 Guilty herein are true and correct, and that any oral

21 statements you make at this hearing are true and

22 correct, so help you God?

23         THE DEFENDANT:  Yes.

24         MS. SMITH:  Thank you.

25         THE COURT:  Have a seat, please, Mr. Grigsby.

1          And for the record, what is your full name?

2          THE DEFENDANT:  Philip Andra Grigsby.

3          THE COURT:  You are the defendant in this

4    case?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  How old are you?

7          THE DEFENDANT:  Fifty.

8          THE COURT:  And how far have you gone in

9    school?

10          THE DEFENDANT:  Eleventh, with a GED.

11          THE COURT:  All right.  Are you under the

12    influence of alcohol or any other drug or medication

13    here today?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Have you used any type of drug or

16    medication in the past two days?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Have you ever been hospitalized or

19    treated for a drug problem?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Are you currently or have you

22    recently been under the care of any kind of mental

23    health professional for a mental, emotional, or

24    psychological problem?

25          THE DEFENDANT:  No, Your Honor.

```
 1            THE COURT:  Have you ever been declared
 2  incompetent by a court, Mr. Grigsby?
 3            THE DEFENDANT:  No, Your Honor.
 4            THE COURT:  Are you feeling healthy today?
 5            THE DEFENDANT:  Yeah.  Yes, Your Honor.
 6            THE COURT:  Well, I mean I understand you may
 7  be feeling a lot of things, but I just want to make
 8  sure that you're not feeling ill.  Is that fair?
 9            THE DEFENDANT:  Yes, Your Honor.
10            THE COURT:  All right.  Any problems
11  understanding me so far?
12            THE DEFENDANT:  No, Your Honor.
13            THE COURT:  Mr. Henderson, you've had an
14  opportunity to meet with Mr. Grigsby.  Do you feel he's
15  competent to go through the hearing here today?
16            MR. HENDERSON:  I do, Your Honor.  Thank you.
17            THE COURT:  All right.  I am going to find
18  that Mr. Grigsby is competent and we will proceed.
19            Mr. Grigsby, you are represented here today by
20  Mr. Henderson.  Do you feel you've had an adequate
21  opportunity to meet with him and to talk about the
22  case?
23            THE DEFENDANT:  Yes, Your Honor.
24            THE COURT:  Have you discussed with
25  Mr. Henderson the possibility of going to trial and
```

1  potential defenses you might have?

2        THE DEFENDANT:  Yes, Your Honor.

3        THE COURT:  Have you made a full and complete

4  disclosure of everything that you know relating to the

5  charges in the superseding indictment with Mr.

6  Henderson?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  Have you been satisfied with the

9  work that he has done on your behalf?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Now, Mr. Grigsby, during this

12  hearing today, I may ask you something that causes you

13  concern or that you have a question about, maybe you

14  don't even understand it because I am not as articulate

15  as I would like to be at times.  But before you answer

16  any of those questions, you ought to consult with

17  Mr. Henderson if you have any question or concerns at

18  all and if you'll just tell me, I need a moment, I'll

19  sit back in the chair, you and Mr. Henderson can

20  consult, and as soon as you're ready, then I'll scoot

21  back up to the bench and we'll go ahead with the

22  hearing.  All right?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  Now, the important thing is,

25  Mr. Grigsby, you need to tell me if you need that time

1  because if you don't, I am going to assume that you

2  don't have questions or concerns and we're just going

3  to move ahead.  All right?

4          THE DEFENDANT:  All right, Your Honor.

5          THE COURT:  Have you received a copy of the

6  superseding indictment in this case?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And have you discussed this

9  superseding indictment in detail with Mr. Henderson?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Mr. Henderson, you have thoroughly

12  reviewed the superseding indictment with Mr. Grigsby?

13          MR. HENDERSON:  I have, Your Honor.

14          THE COURT:  You're satisfied that he

15  understands each of the charges?

16          MR. HENDERSON:  I do, Your Honor.

17          THE COURT:  Now, Mr. Grigsby, Count 1 charges

18  you with sexual exploitation of a child, specifically,

19  it claims that on or about March 24th of 2012 here

20  within the District of Kansas you, perhaps using your

21  name or any of the names set out in the indictment, did

22  knowingly employ, use, persuade, induce, entice, and

23  coerce a minor, that being nine-year-old Jane Doe, born

24  in 2002, to engage in sexually explicit conduct for the

25  purpose of producing a visual depiction of such

1  conduct, that being a video entitled "suck 1.jpg"

2  using materials that had been mailed, shipped,

3  transported in and affecting interstate and foreign

4  commerce by any means, in violation of Title 18 U.S.C.,

5  Section 2251(a).

6            Do you understand that charge?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Do you have any question about it?

9            THE DEFENDANT:  No, Your Honor.

10            THE COURT:  Count 2 charges you with the same

11  offense, but alleges that it took place on or about

12  March 31st of 2012 in the District of Kansas, once

13  again involving a nine-year-old Jane Doe, born in 2002,

14  this time to produce a video entitled "breakfast 3.jpg"

15  again using materials that transfer or that moved in

16  interstate or foreign commerce.

17            You understand that charge?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Count 3 is also sexual

20  exploitation of a child.  It charges that on or about

21  April 19th of 2012, here within the District of Kansas,

22  you again used a minor, nine-year-old, Jane Doe, born

23  in 2002, to engage in sexually explicit conduct for the

24  purposes of producing a video entitled as "fuck 3.jpg"

25  and that the visual depiction was transported using

1  means and facilities of interstate and foreig1n

2  commerce.

3          Do you understand that charge?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Count 4 also charges sexual

6  exploitation of a child charging that on April 19th of

7  2012 within the District of Kansas you did, again, use

8  a minor, nine-year-old Jane Doe, born in 2002, to

9  engage in sexually explicit conduct for the purposes of

10  producing a video entitled "suck 13.jpg."  The visual

11  depiction was transported in interstate and foreign

12  commerce.

13          You understand that charge?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Count 5 also charges sexual

16  exploitation of a child.  It claims that on or about

17  April 29th of 2012 within the District of Kansas you

18  used a nine-year-old minor, Jane Doe, born in 2002, to

19  engage in sexually explicit conduct for the purpose of

20  producing a visual depiction entitled "hand job 3.jpg"

21  and that that visual depiction was transported in

22  interstate and foreign commerce.

23          You understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Count 6 also charges sexual

1   exploitation of a child.  It claims that on a date

2   unknown to the Grand Jury, but before July 16th of

3   2012, you did use nine-year-old Jane Doe, a minor born

4   in 2002, to engage in sexually explicit conduct for the

5   purpose of producing a visual depiction of the conduct,

6   that being an image entitled "after school snack

7   1.jpg," using materials that had been mailed, shipped,

8   and transported in interstate and foreign commerce.

9           You understand that charge?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Count 7 also charges sexual

12  exploitation.  It's on a date unknown to the Grand Jury

13  but before July 16th of 2012, here in the District of

14  Kansas you did, again, use nine-year-old Jane Doe, born

15  in 2002, a minor, to engage in sexually explicit

16  conduct for the purpose of producing a visual depiction

17  of the conduct, that being an image titled "bondage

18  4.jpg" using materials mailed, shipped, and transported

19  in interstate and foreign commerce.

20          Do you understand that charge?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Count 8 charges also sexual

23  exploitation of a child.  It alleges that on a date

24  unknown to the Grand Jury but before July 16th of 2012,

25  here in the District of Kansas, you again used

1  nine-year-old Jane Doe, born in 2002, a minor, to

2  engage in sexually explicit conduct for the purposes of

3  producing a visual image identified as "2[1969284].jpg"

4  using materials that had been mailed, shipped, and

5  transported in interstate and foreign commerce.

6          Do you understand that claim?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Count 9 charges that on or about

9  July 17th, in the District of Kansas, you possessed and

10  accessed with the intent to view one or more matters

11  which contained visual depictions of minors, the

12  production of which involved the use of minors engaging

13  in sexually explicit conduct.  That such visual

14  depictions were of such conduct and they had been

15  mailed, shipped, and transported in interstate commerce

16  by computer, and that you did, in fact, knowingly and

17  intentionally possess and access these images.

18          You understand that offense?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Count 10 alleges that on or about

21  July 17th of 2012 in the District of Kansas, you,

22  having been convicted of a crime punishable by

23  imprisonment for a term exceeding one year, did

24  knowingly possess in and affecting commerce one or more

25  of the following firearms and ammunition, each of these

1 | firearms and ammunition having been shipped and

2 | transported in interstate commerce:

3 | An Ithaca, Model 51, .12 gauge shotgun, Serial

4 | 510009384; a Chinese, Model SKS 7.62x39 caliber rifle

5 | Serial Number 3175967; a Norinco, Model SKS 7.62x39

6 | caliber rifle, Serial Number 1209413; a Savage, Model

7 | 110, 30.06 caliber rifle, Serial F14290; a KSA LLC,

8 | Model Crickett .22 caliber rifle, Serial Number 276057;

9 | a Sturm Ruger, Model 10/22, .22 caliber rifle, Serial

10 | Number 252-94311; a Harrington & Richardson, Model

11 | Pardner, .410 shotgun, Serial Number HX 210564; a Stern

12 | Ruger, Model GP100, .357 magnum revolver, Serial Number

13 | 171-21636; a Smith & Wesson Model 10-5, .38 revolver,

14 | Serial Number D142943; and ammunition.

15 | Do you understand that charge?

16 | THE DEFENDANT:  Yes, Your Honor.

17 | THE COURT:  Now do you understand that with

18 | respect to Count 1 of the superseding indictment you

19 | face a minimum sentence of not less than 15 years, a

20 | maximum punishment of 30 years, to be followed by a

21 | term of supervised release of at least five years, not

22 | to exceed life; a fine not to exceed $250,000, which

23 | may accrue interest if not paid at the time of

24 | sentencing.  And if you would violate any term of your

25 | supervised release you could be imprisoned for up to an

1  additional three years.

2          Do you understand that, Mr. Grigsby?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And do you understand that with

5  respect to Count 2 of the superseding indictment you

6  face exactly the same charges that you did in -- or

7  excuse me, the same penalties that you did in Count 1?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Now, I note that the plea

10 agreement (sic) indicates that if you are in violation

11 of your supervised release the term could be revoked

12 and an additional term of imprisonment not to exceed

13 two years may be imposed.

14          MR. HART:  Your Honor, you're referencing the

15 petition?

16          THE COURT:  Yes.

17          MR. HART:  Okay.  You said plea agreement

18 and --

19          THE COURT:  I am sorry, petition is what I

20 meant.

21          And I believe that any offense that has a

22 penalty of 25 years or more it's three years, up to an

23 additional three years.

24          Is there any question about that?

25          And that's laid out I think at 18 U.S.C.,

1 Section 3583(e)(3).

2          MR. HENDERSON:  No, I apologize, Your Honor,

3 that's correct.

4          THE COURT:  All right.  We can make those

5 corrections by interlineation.

6          Do you understand as well, Mr. Grigsby, that

7 you face the same penalties with respect to Count 3,

8 Count 4, Count 5, Count 6, Count 7, and Count 8 of the

9 superseding indictment?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  That is, you face a minimum of 15

12 years in prison, a maximum of 30 years; a minimum of

13 five years supervised release, maximum of life.  If you

14 would violate any term of your supervised release, you

15 could be imprisoned for up to an additional three

16 years.  You also face a fine on each of these counts

17 not to exceed $250,000, as well as a $100 special

18 assessment per count.

19          Do you understand that that's true for each of

20 Counts 1 through 8?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  All right.

23          With respect to Count 9, there is no minimum

24 term of confinement but there is a maximum term of 10

25 years; again, to be followed by a term of supervised

1  release not to exceed 5 years, excuse me, of at least

2  five years, not to exceed life.

3          This will be running concurrent with all of

4  your other supervised release terms, Mr. Grigsby.

5          But in this case, if you would violate any

6  term of your supervised release, that would be a term

7  of imprisonment not to exceed two years.

8          Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you understand that here, too,

11  you face a fine not to exceed $250,000 and a $100

12  special assessment?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Finally, Count 10 of the

15  superseding indictment you face no minimum term of

16  confinement, a maximum of ten years, to be followed by

17  a term of supervised release not to exceed three years.

18          If you'd violate any term of your supervised

19  release you could be imprisoned up to an additional two

20  years on Count 10.  You also face a fine not to exceed

21  $250,000 and a special assessment of $100,000.

22          Do you understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Do you have any questions about

25  any of the charges against you or the potential

1  penalties you face?

2          THE DEFENDANT:  No, Your Honor.

3          THE COURT:  You've discussed them all

4  carefully with Mr. Henderson?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And, Mr. Henderson, you have

7  reviewed each of these charges carefully with

8  Mr. Grigsby?

9          MR. HENDERSON:  I have, Your Honor.

10         THE COURT:  You're satisfied that he

11  understands them?

12         MR. HENDERSON:  I am, Your Honor.

13         THE COURT:  And you've also reviewed the

14  potential penalties for each offense with him?

15         THE DEFENDANT:  I have, Your Honor.

16         THE COURT:  You're also satisfied that he

17  understands those?

18         MR. HENDERSON:  I am, Your Honor.

19         THE COURT:  Okay.  Now, Mr. Grigsby, at the

20  time of your sentencing, I am going to have a copy of a

21  presentence report prepared by the U.S. Probation

22  Office.  And that will be done after interviewing you

23  and doing a significant amount of other digging

24  relating to matters about your life.  Mr. Henderson

25  should accompany you to your interview with probation

1  office for purposes of the report to make certain that

2  your interests are protected but I'll have reviewed

3  that report and I will have considered the sentencing

4  factors at 18 U.S.C., Section 3553(a), including the

5  advisory sentencing guidelines.

6           And have you talked about those guidelines

7  with Mr. Henderson?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Now, what typically happens in a

10  case like this, Mr. Grigsby, where there are multiple

11  counts, is these cases get -- there's stacking that

12  occurs in determining what your offense level is and

13  so, typically, although there will be a number of

14  counts of conviction here, they're not all going to be

15  added together.  They're going to be grouped and you

16  will end up with an offense level; you will -- your

17  criminal history category will be determined, and that

18  will be pre these convictions, so we'll look at what

19  your history is before these convictions, and that will

20  lead me to a place on the table that lays out the

21  various guideline ranges.

22           And I assume that you have reviewed that with

23  Mr. Henderson?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  And you have made some kind of

1  calculation, I assume, with Mr. Henderson, which is

2  essentially an educated determination of what your

3  sentence in this case could possibly be?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Is that also accurate?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Now, no promises have been made to

8  you about what sentence you will receive, is that also

9  accurate?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And I'm sure Mr. Henderson

12  explained to you that what sentence you ultimately

13  receive in this case will be my determination and my

14  determination alone.  You understand that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  You also understand, though, that

17  that will be after reviewing materials I told you

18  about, after hearing from the Government, after hearing

19  from Mr. Henderson on your behalf and after hearing

20  from you, if you choose to make any kind of a statement

21  at all, that's the point where I will determine finally

22  and impose what your final sentence is in this case.

23          Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And do you understand that the

1 guidelines, the sentencing guidelines are advisory and

2 I am not bound by the guidelines.  If I felt it was

3 appropriate, I could give you a longer sentence or I

4 could give you a shorter sentence than what the

5 guidelines call for.

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  All right.  Do you have any

8 questions at all about either the crimes that are set

9 out in the superseding indictment, the potential

10 penalties they carry, or the way sentencing works?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  And you've reviewed all these

13 carefully with Mr. Henderson?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Mr. Henderson, you've reviewed all

16 of these matters with Mr. Grigsby?

17          MR. HENDERSON:  I have, Your Honor.

18          THE COURT:  You're satisfied he understands

19 them?

20          MR. HENDERSON:  I am, Your Honor.

21          THE COURT:  All right.  Mr. Grigsby, are you

22 an American citizen?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  So we don't have to get into

25 deportation consequences.

1          Now, Mr. Grigsby, I know that you intend to

2    plead guilty to these charges today, and

3    notwithstanding that, as you sit here right now, you

4    are still presumed innocent of every one of these

5    charges.

6          Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Do you understand that you also

9    have the right to persist in a not guilty plea to all

10   of these charges and to have a trial?

11         Do you understand you have that right?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Now if you chose to have a trial,

14   Mr. Grigsby, it would be a speedy trial, it would be a

15   public trial, and it would be a trial to a jury unless

16   you chose not to have a jury decide your case and to

17   me -- and to have me decide it sitting as the Court

18   instead.

19         Do you understand that?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Do you understand that you'd have

22   the right to the effective assistance of a lawyer at

23   your trial?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  That you would have the right to

1  be present at your trial, to see and to hear all of the

2  evidence presented against you, and to cross examine

3  adverse witnesses?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  Do you understand that you would

6  have the right to use the Court's subpoena power, that

7  is you could obtain court orders to compel the

8  production of any evidence that you needed to use in

9  your defense at trial, to be brought here to this

10  courtroom for you to use, including witnesses who could

11  testify favorably for you?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Do you understand that at your

14  trial, if you chose to have one, you would have either

15  the right to testify, or the privilege of refusing to

16  testify?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  And do you understand,

19  Mr. Grigsby, that if you refuse to testify, neither the

20  judge nor the jury can hold that against you in any

21  way?

22        THE DEFENDANT:  Yes, Your Honor.

23        THE COURT:  Finally, do you understand that if

24  you were found guilty on one or more of these charges,

25  you would have the right to appeal that finding of

1  guilt and any errors that you claim occurred anywhere

2  during the course of this prosecution to the U.S. Court

3  of Appeals for the Tenth Circuit?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Now, if you plead guilty to these

6  charges today, and if I accept your plea and I find you

7  guilty to each of these charges, there will not be any

8  further trial of any kind.  You're going to be waiving

9  your right to trial for all time and you're going to be

10  submitting to sentencing by the Court.

11          Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Have you visited with

14  Mr. Henderson about your right to trial and all the

15  rights and privileges that attach to it?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you have any questions about

18  any of them?

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  Do you understand them all?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Mr. Henderson, you've thoroughly

23  reviewed the right to trial and all the rights and

24  privileges that attach to it with Mr. Grigsby?

25          MR. HENDERSON:  I have, Your Honor.

1          THE COURT:  You're satisfied he understands

2   them all?

3          MR. HENDERSON:  I am, Your Honor.

4          THE COURT:  All right.

5          Well, Mr. Grigsby, you have chosen to proceed

6   without a plea agreement in this case and have you

7   discussed proceeding in this manner with Mr. Henderson?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Do you understand that a plea

10  agreement is actually a written contract between, in

11  this district, the U.S. Attorney's Office for the

12  District of Kansas, and you, whereby typically you make

13  certain promises to the Government; the Government

14  makes certain promises to you and that may relate to

15  which charge or charges you plead guilty to; it could

16  relate to the dismissal of one or more of the charges

17  at some point; it may relate to a sentence that the

18  Government's going to recommend on your behalf, or what

19  you intend to seek in the way of a sentence that the

20  Government's not going to object to; it may relate to

21  your right to appeal or collaterally attack or your

22  waiver of the right to appeal or collaterally attack;

23  it may set out the specific facts that you agree

24  reflect your conduct that makes you guilty of the

25  charge; it may address matters relating to the

1    sentencing guidelines.

2              Typically, it involves the Government being

3    willing to recommend that your offense level be

4    reduced, depending on what the offense level is, by two

5    or three levels reflecting the fact that you accept

6    responsibility for what you have done, and your timely

7    notification to the Government of your intention to

8    enter a guilty plea or guilty pleas rather than going

9    to trial.

10             There may be matters that relate to your

11   ability to gain access later from the Government to

12   matters relating to the investigation and prosecution

13   of this case.  They may go to your right to object to

14   the Government's ability to disclose to third persons

15   information about your case.  In other words, it can

16   cover a full range of matters.

17             Do you understand that that's the nature of a

18   plea agreement?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And you are telling me that in

21   this case, after consulting with Mr. Henderson, that

22   you are choosing to proceed without a plea agreement,

23   is that correct?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Is that still your intention,

1  Mr. Grigsby?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Have any force, threats, or

4  promises been made to you to induce you to proceed

5  without a plea agreement in this case?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Do you just feel it's in your best

8  interests after consulting with Mr. Henderson to

9  proceed without a plea agreement?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And it is your desire to do that,

12  is that correct?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And, Mr. Henderson, you have

15  visited with Mr. Grigsby, obviously, about what plea

16  agreements typically contain?

17          MR. HENDERSON:  I have, Your Honor.  And I

18  think it's fair to report in this case that there was

19  no plea offer from the Government.

20          THE COURT:  I see.  And so you agree then with

21  Mr. Grigsby's determination to proceed and plead to the

22  charges or plead guilty to them without a plea

23  agreement?

24          MR. HENDERSON:  I do, Your Honor, and I think

25  also fair to say in this case, and it's unusual, but in

1  this case he had no choice; there was no opportunity.

2          THE COURT:  I understand that.

3          MR. HENDERSON:  But I do concur, Your Honor.

4          THE COURT:  All right.  Well, that being the

5  case then, Mr. Grigsby, let's go over your Petition to

6  Enter a Plea of Guilty to these charges.

7          Do you understand that if you sign and present

8  this petition to me, that you are telling me, first of

9  all, that you have had the opportunity to fully and

10 completely review the petition with Mr. Henderson?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And apart from that, Mr. Grigsby,

13 and having reviewed it with Mr. Henderson, do you have

14 any questions at all about what any part of this

15 Petition to Enter a Guilty Plea means?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Do you understand that if you sign

18 and present this to me today, you are telling me that

19 you want to plead guilty to Counts 1 through 10 of the

20 superseding indictment?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And you understand that if you

23 plead guilty to one or more of those charges -- well,

24 excuse me, when we include 10, which charges you with

25 being a felon in possession of a firearm, that you're

1  essentially agreeing to forfeiture of all of the

2  equipment that's laid out in the forfeiture provisions

3  of the indictment, including the firearms and the

4  computer equipment and so forth?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.  Do you understand that

7  you are asking me, again, to accept your guilty pleas

8  to all of these charges and to find you guilty?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  You're telling me that you have

11 met at length with Mr. Henderson, and that you fully

12 understand each of the charges and the potential

13 penalties?

14         THE DEFENDANT:  Yes, Your Honor, I accept

15 responsibility for them all.

16         THE COURT:  And you understand that you do

17 have the right, Mr. Grigsby, to go to trial, and all

18 the rights and privileges that attach to that right?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  And you're telling me you

21 understand you're giving up your right to trial?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And you're telling me,

24 Mr. Grigsby, that you are doing this because you are

25 guilty and not as a result of force, threats, or

1  coercion, or promises?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Again, do you have any questions

4  about this petition?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Mr. Henderson, you have thoroughly

7  reviewed the petition with Mr. Grigsby?

8          MR. HENDERSON:  I have, Your Honor.

9          THE COURT:  You're satisfied he understands

10 it?

11         MR. HENDERSON:  I am, Your Honor.

12         THE COURT:  Mr. Grigsby, have any force,

13 threats, or coercion been used to induce you to sign

14 and present this petition to me today?

15         THE DEFENDANT:  No, Your Honor.

16         THE COURT:  Are you ready to sign it?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Then would you please sign and

19 date the petition and tell me when you've finished.

20         (Complies.)

21         THE DEFENDANT:  I've signed it.

22         THE COURT:  Thank you.

23         And, Mr. Henderson, have you signed the

24 certificate?

25         MR. HENDERSON:  I am right now, Your Honor.

```
 1            THE COURT:  After you've completed that, if
 2   you would bring the original petition up to Ms. Smith,
 3   I would appreciate it.
 4            MR. HENDERSON:  I will, Your Honor.
 5            Your Honor, if I might add, also, again,
 6   because we didn't have a plea agreement we didn't have
 7   an articulated statement of facts but I wanted the
 8   Court to know that Mr. Grigsby has adopted each of the
 9   statements that we've outlined in the petition under
10   each of the counts as a statement of facts and we
11   believe those are --
12            THE COURT:  Thank you very much, appreciate
13   that.
14            And, Mr. Hart, I am going to have you
15   additionally articulate a factual basis for each of the
16   charges in a moment.
17            Mr. Grigsby, do you have any question about
18   any matter that I have raised here with you today?
19            THE DEFENDANT:  No, Your Honor.
20            THE COURT:  Do you need any further time to
21   consult with Mr. Henderson about anything before I ask
22   you for your plea to each of these charges?
23            THE DEFENDANT:  No, Your Honor.
24            THE COURT:  Then with respect to Count 1 of
25   the superseding indictment charging you with sexual
```

1  exploitation of a child, in violation of 18 U.S.C.,

2  Section 2251(a), what plea do you wish to enter?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  With respect to Count 2, charging

5  sexual exploitation of a child, in violation of 18

6  U.S.C., Section 2251(a), what plea do you enter?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  With respect to Count 3, charging

9  sexual exploitation of a child, in violation of

10 18 U.S.C., Section 2251(a), what plea do you wish to

11 enter?

12         THE DEFENDANT:  Guilty.

13         THE COURT:  With respect to Count 4 of the

14 superseding indictment charging sexual exploitation of

15 a child, in violation of 18 U.S.C., Section 2251(a),

16 what plea do you wish to enter?

17         THE DEFENDANT:  Guilty.

18         THE COURT:  With respect to Count 5 of the

19 superseding indictment charging you with sexual

20 exploitation of a child, in violation of 18 U.S.C.,

21 Section 2251(a), what plea do you wish to enter?

22         THE DEFENDANT:  Guilty.

23         THE COURT:  With respect to Count 6 of the

24 superseding indictment charging you with sexual

25 exploitation of a child, in violation of 18 U.S.C.,

1  Section 2251(a), what plea do you wish to enter?

2          THE DEFENDANT:  Guilty.

3          THE COURT:  With respect to Count 7 of the

4  superseding indictment charging you with sexual

5  exploitation of a child, in violation of 18 U.S.C.,

6  Section 2251(a), what plea do you wish to enter?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  With respect to Count 8 of the

9  superseding indictment charging you with sexual

10  exploitation of a child, in violation of 18 U.S.C.,

11  Section 2251(a), what plea do you wish to enter?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  With respect to Count 9 of the

14  superseding indictment charging you with possession

15  with the intent to view one or more matters which

16  contained visual depiction of minors, the production of

17  which involved the use of minors engaging in sexually

18  explicit conduct, such depictions being of such conduct

19  and these matters having been mailed, shipped, and

20  transported in interstate commerce by a computer, in

21  violation of 18 U.S.C., Section 2252(a)(4)(B), what

22  plea do you wish to enter?

23          THE DEFENDANT:  Guilty.

24          THE COURT:  With respect to Count 10 of the

25  superseding indictment charging you with being a felon

1  in possession of firearms, in violation of 18 U.S.C.,

2  Sections 922(g)(1) and 924(a)(2), what plea do you wish

3  to enter?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  With respect to the forfeiture

6  allegations, the first 14 of which relate to computers,

7  webcams, routers, cameras, DVD players, flash drives,

8  and external drive, CDs, and sex toys and lingerie, are

9  you waiving your right to contest forfeiture of those

10  items to the government?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And with respect to the firearms

13  and ammunition that I went through with you a short

14  while ago, are you also waiving your right to contest

15  forfeiture of those items to the Government?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.

18          Mr. Hart, if you would show a factual basis

19  for Count 1 through 10.

20          MR. HART:  Yes, Your Honor.

21          On or about July 12th of 2012, FBI Special

22  Agent Daniel O'Donnell, while on temporary duty

23  assignment in Australia began an investigation related

24  to images of a minor whom we referred to as Jane Doe

25  that had been transmitted to Australia via e-mail from

1  an IP address associated with the residence of

2  Philip A. Grigsby, the defendant in this case, at his

3  address in Marquette, Kansas.

4        Three e-mail addresses in particular were

5  identified as being used by the same individual to

6  transmit the images of Jane Doe.  In subsequent

7  interview with the defendant, the defendant

8  acknowledged that he had set up each of these e-mail

9  addresses and used them.

10        With the information obtained by

11  Daniel O'Donnell, which included chat logs and e-mail

12  content, search warrants were obtained and presented to

13  and reviewed by and authorized by the

14  Honorable Judge Karen Humphreys, Chief Magistrate Judge

15  here in the District of Kansas.  Those warrants were

16  executed on July 17th, 2012 and again a subsequent

17  search warrant on July 23rd, 2012.

18        These search warrants resulted in the seizure

19  of a variety of digital media, including computers,

20  cameras, and external hard drives from the residence.

21  These guys were subsequently forensically examined by

22  FBI Task Force Officer Brad Celestin.  Task Force

23  Officer Celestin showed images and videos of child

24  pornography, meaning minor children engaged in the

25  sexually explicit conduct to include acts of sexual

1  intercourse or oral sex or sodomy.  Celestin found

2  these images on several of the devices.  TFO Celestin

3  also found images depicting Jane Doe engaged in

4  sexually explicit conduct.

5       Agents were also able to identify through

6  their investigation Jane Doe as a minor female born in

7  2002 residing here in Kansas.

8       TFO Celestin's examination revealed over 400

9  images and five movies depicting Jane Doe engaged in

10  sexually explicit conduct.  These images and videos are

11  separate and distinct from the images of child

12  pornography that relate to Count 9.  These images and

13  videos were found on the defendant's property, in

14  particular a Dell Inspiron laptop; a SanDisk thumb

15  drive; an Olympus digital camera and; a Vado --

16  V-a-d-o -- creative digital camera.  The images found

17  by FTO Celestin included some of those that had been

18  sent to Australia.

19       The images related to Jane Doe had been

20  organized on the laptop under a folder titled "Megan"

21  -- M-e-g-a-n -- which is not Jane Doe's real name but

22  was the pseudo name given to Jane Doe during the

23  communications with the individual in Australia.

24       Within these folders, within these organized

25  folders, Agent Celestin found a number of the images

1  which relate to the Counts 1 through 8.

2          With relation to Count 1, Agent Celestin found

3  a video titled "suck 1.mpg," which had been -- had

4  excess data which is the metadata behind the image that

5  showed it had been created with the Vado creative

6  digital camera.  That camera had been manufactured in

7  China such that it was transported or shipped in

8  interstate or foreign commerce in order to reach the

9  defendant.

10          Based on the contents of the chat logs and

11  e-mails and the XF data, as well as some data retrieved

12  from the computer, it was determined that this video

13  was made on approximately March 24th, 2012.

14          As it relates to Count 2, Agent Celestin found

15  a image titled "breakfast 3.jpg."  It was determined

16  that this was produced using the Olympus digital

17  camera, that camera having been manufactured in China

18  and thus having been transported or shipped in

19  interstate or foreign commerce prior to its arrival to

20  the defendant.

21          Based on the chat log content it was

22  determined that this photograph had been produced on or

23  about March 31st, 2012.  And in terms of content, this

24  particular image related to oral sex by the child being

25  performed upon the defendant.

1          Count 1 also involved that type of conduct.

2          As it relates to Count 3, this is

3  based -- this is in relation to an image titled "ass

4  fuck 3.jpg" which was observed in the first e-mail sent

5  to the individual in Australia on April 19th, 2012.

6  This particular image depicts Jane Doe engaged in

7  sodomy.  This particular image had been transported via

8  the internet from Kansas to Australia.

9          Count 4 relates to an image in a second e-mail

10 to the individual in Australia.  This is an image

11 titled "suck 13.jpg" which shows the minor child,

12 Jane Doe, engaged in oral sex by the child on the

13 defendant.  That visual depiction having been

14 transported in interstate commerce via the internet

15 from Kansas to Australia.

16         Count 5 relates to an image that TFO Celestin

17 found -- I'm sorry, that image relates to the

18 third -- a third e-mail that was sent by the defendant

19 to the individual in Australia on April 29th, 2012.

20 The image titled "hand job 3.jpg" shows the

21 masturbation of the defendant by the child of Jane Doe.

22 That visual image was actually transported via the

23 internet from Kansas to Australia.

24         As it relates to Count 6, TFO Celestin found

25 an image entitled "after school snack 1.jpg" that had

1  been produced using the Olympus digital camera; that

2  camera previously referenced having been manufactured

3  in China and transported in interstate or foreign

4  commerce.  That image was believed to have been

5  produced sometime between March, 2012 and July, 2012.

6  This depicts the minor victim performing oral sex upon

7  the defendant in his truck.

8        Count 7 relates to an image found by TFO

9  Celestin titled "bondage 4.jpg" which had been produced

10  using the Olympus digital camera previously referenced.

11  This depicts the sexual bondage of the child.  It is

12  believed that this was produced between March, 2012 and

13  July, 2012 by the defendant.

14        As it relates to Count 8, this is another

15  image found by TFO Celestin, also depicting the sexual

16  bondage of the child.  That image is identified as

17  "2[1969284].jpg."  This particular image had been made

18  using the Olympus digital camera previously referenced

19  and is believed to have been produced between March,

20  2012 and July, 2012.

21        And as to make sure the Court is aware, this

22  is a sampling of the images produced by the defendant.

23  They were produced over, in multiple areas of the

24  defendant's residence, outside of his residence, and in

25  other locations and reflect singular incidents related

1  to the production of child pornography.

2          As it relates to Count 9 which relates to the

3  other images of child pornography, not including

4  Jane Doe, these were in the form of computer files

5  found on the defendant's laptop which TFO Celestin

6  recognized to include known series of child

7  pornography, that being previously identified images

8  involving identified children.  Those images included

9  depictions of those minor children engaged in sexual

10 intercourse or sodomy based upon his prior experience

11 in these investigations.  TFO Celestin knew that these

12 images had -- some of these images had been produced

13 outside of the State of Kansas and would necessarily

14 have transported -- traveled through interstate

15 commerce, and based upon the chat logs which indicate

16 some transfer of this sort of material between the

17 individual in Australia and the defendant, that it is

18 believed that such transportation occurred via the

19 internet through his messaging channels.

20         Count 10 relates to the defendant's prior

21 conviction.  It was determined that the defendant had

22 been previously convicted of a crime punishable by

23 imprisonment for a term exceeding one year, that being

24 having been convicted of aggravated battery with great

25 bodily harm, in Lake County, Florida, Case Number

1  88-78-CFA; and aggravated assault with a deadly weapon

2  in Lake County, Florida, Case Number 88-79-CFA, and

3  that subsequent to his conviction for those offenses in

4  those cases, the defendant did knowingly possess the

5  firearms that the Court previously listed, as well as

6  ammunition.

7        Those firearms being functional and having

8  been reviewed by the Bureau of Alcohol Tobacco and

9  Firearms and Explosives and having had those firearms

10  determined to have been manufactured outside the State

11  of Kansas, such that the firearms and ammunition had

12  been shipped and transported in interstate commerce

13  prior to their arrival in the defendant's possession.

14        Those will be the facts that the Government

15  would present should this matter proceeded to trial.

16        THE COURT:  Thank you, Mr. Hart.

17        Mr. Grigsby, you have heard the Government's

18  statement and do you have any disagreement with any of

19  the facts that Mr. Hart just set out for us here?

20        THE DEFENDANT:  No, Your Honor.

21        THE COURT:  And following up on what

22  Mr. Henderson noted a few moments ago, you adopt the

23  factual statements that are set out on Pages 1 through

24  the top -- or through about halfway down Page 4 of the

25  petition as your own statements?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And you acknowledge that all of

3  those statements are accurate?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Do you question in any way the

6  sufficiency of the factual basis set out by the

7  Government here today?

8          Or by your own acknowledgment of your conduct?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Mr. Henderson, do you believe it's

11  an adequate factual basis?

12          MR. HENDERSON:  I do, Your Honor.

13          THE COURT:  All right.  Well, Mr. Grigsby,

14  that being the case, have any promises at all been made

15  to you, or have any force, threats, or coercion been

16  used to induce you to enter any of these ten guilty

17  pleas to these charges today?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Do you understand that you are

20  essentially giving up your right to trial with respect

21  to every one of these charges --

22          THE DEFENDANT:  Yes.

23          THE COURT:  -- by pleading guilty today?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Are you guilty of each of these

1  offenses?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Is there any other reason that you

4  are pleading guilty?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Mr. Henderson, do you know of any

7  reason why I should not accept Mr. Grigsby's guilty

8  plea here today?

9          MR. HENDERSON:  No, Your Honor.

10          THE COURT:  All right.

11          Well, Mr. Grigsby, I am going to accept your

12  guilty plea to each of Counts 1 through 10, as you have

13  prayed for in your petition, and as Mr. Henderson has

14  recommended in his certificate; further, I am finding

15  you guilty of sexual exploitation of a child, as set

16  out in each of Counts 1 through 8; I am finding you

17  guilty -- and those are all in violation of 18 U.S.C.,

18  Section 2251(a); I am finding you guilty of possession

19  of child pornography as set out in Count 9 of the

20  indictment, violation of 18 U.S.C., Section

21  2252(a)(4)(b); and I am finding you guilty of being a

22  felon in possession of firearms, as set out in Count

23  10, violation of 18 U.S.C., Section 922(g)(1), and

24  924(a)(2).

25          I am finding that you made your plea to each

1  of these counts freely, voluntarily, and because you

2  are guilty as charged; and not out of ignorance, fear,

3  inadvertence, or coercion.

4          I am finding that you pleaded guilty with full

5  knowledge and understanding of the consequences of your

6  plea.

7          I am finding that you have admitted the

8  essential elements of the crimes charged.

9          I am going to have probation do a presentence

10 report in your case.

11         So, Mr. Henderson, if you would notify

12 probation, I would appreciate it.

13         And as I indicated earlier, Mr. Grigsby,

14 Mr. Henderson should accompany you to your interview

15 with the probation office to make certain that your

16 rights are protected.

17         Sentencing will be set for Monday, February 4,

18 2013, at 10 o'clock in the morning.  That's Monday,

19 February 4, 2013, at 10 o'clock in the morning.

20         Detention is ordered continued.

21         Anything further from the Government in this

22 matter today, Mr. Hart?

23         MR. HART:  Your Honor, based upon the

24 defendant's entry of the plea, that obviates the need

25 for the search warrant that the Court granted the

1   provisional stay on.  I think the appropriate way to

2   deal with that is for the officer to execute a

3   nonreturned return, closing out the search warrant and

4   thus disposing of that.

5           THE COURT:  That's fine with me.

6           Mr. Henderson, do you have any problem with

7   that?

8           MR. HENDERSON:  No, Your Honor.  Thank you.

9           THE COURT:  All right.  Thank you.

10          Anything else, Mr. Hart?

11          MR. HART:  No, Your Honor.

12          THE COURT:  Anything else today,

13  Mr. Henderson?

14          MR. HENDERSON:  No, Your Honor.  Thank you.

15          THE COURT:  Thank you.  That will conclude

16  this matter for today.

17          And thank you, Mr. Grigsby.

18          I appreciate, counsel, your willingness and

19  ability to get the paperwork taken care of so we could

20  still get this resolved today through the plea stage.

21          That will conclude that matter for today.

22          (Proceedings conclude at 2:30 p.m.)

23

24

25

```
 1               C E R T I F I C A T E

 2

 3          I, Jana L. McKinney, United States Court

 4   Reporter in and for the District of Kansas, do hereby

 5   certify:

 6          That the above and foregoing proceedings were

 7   taken by me at said time and place in stenotype;

 8          That thereafter said proceedings were

 9   transcribed under my discretion and supervision by

10   means of computer-aided transcription, and that the

11   above and foregoing constitutes a full, true and

12   correct transcript of requested proceedings;

13          That I am a disinterested person to the said

14   action.

15          IN WITNESS WHEREOF, I hereto set my hand on

16   this, the 16th day of January, 2013.

17

18                    s/ Jana L. McKinney
                      Jana L. McKinney, RPR, CRR, RMR
19                    United States Court Reporter

20

21

22

23

24

25
```