IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| Plaintiff, | } | |
| | } | |
| vs. | } | Case No. 12-10174-01-JTM |
| | } | |
| PHILIP ANDRA GRIGSBY, | } | |
| Defendant, | } | |
| _____ | } | |

**DEFENDANT'S SENTENCING MEMORANDUM**
**REGARDING APPLICATION OF THE SENTENCING GUIDELINES**

On February 27, 2013, the Sentencing Commission released its "Federal Child Pornography Offenses" report to Congress ("Report"). [1] The Report is over 400 pages long. Most of the Report addresses issues regarding the sentencing guidelines as they apply to "non-production" cases, that is cases involving the possession, receipt or distribution of child pornography, not the actual production of the pornography.   There has been a Tsunami like swell of opposition to the non-production child pornography guidelines (U.S.S.G. § 2G2.2) as described in the Report and best represented by the Second Circuit's decision in United States v. Dorvee, 616 F.3d 174 (2nd Cir. 2010) which concluded:

_____

[1]http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/S ex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm

> District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under 2G2.2 - ones that can range from non-custodial sentences to the statutory maximum - bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results.

Id at 188.   In summary, the non-production guideline routinely generates offense levels at or in excess of the mandatory statutory sentence, fails to distinguish between levels of culpability and establishes enhancements for conduct which is present in most cases (and not deserving of additional punishment beyond the core offense).

The production guidelines (U.S.S.G. § 2G2.1) are similarly defective and should be carefully applied.  In United States v. Almazan, 2012 WL 6019281 (N.D. Iowa 2012), Judge Bennett noted with reference to a prior decision "I categorically rejected 2G2.1 because it did not reflect empirical analysis, but congressional mandates that interfere with and undermine the work of the Sentencing Commission. [cite omitted].  I also rejected 2G2.1 because it recommended enhancements that did not distinguish between the least and worst offenders.  Rather, 2G2.1 recommended enhancements for conduct present in nearly every case which it applied. . . . ." Id at *5   The court explained, with reference again to its prior decision in United States v. Jacob , 631 F. Supp.2d 1099, 1114 - 1115 (N.D. Iowa 2009) that the conduct present in nearly every case included (b)(1) enhancement for the age of the

victim, (b)(3) enhancement for distribution, (b)(4) enhancement for material involving sadistic or masochistic conduct, (b)(6)(B) enhancement for use of a computer. Id.   Judge Bennett is not alone.

In United States v. Krueger, 2009 WL 4164122 (E.D.Wis.  2009), Judge Adelman referred to her prior criticism of the non-production guidelines and concluded that some of the same flaws present as to those guidelines were also present in 2G2.1. Id at *3.  The Court noted that the Seventh Circuit recognized that the production guideline was not fully the product of the Sentencing Commission's "study or expertise" and that Congress interfered with the Commission in its function of setting the guideline enhancements.  Id. citing to United States v. Huffstatler, 571 F.3d 620, 623 (7th Cir. 2009).    Given the flaws in the production guideline 2G2.1, she started with the statutory range and considered appropriate aggravating circumstances as well as the defendant's history and characteristics.  Id at *4.

In a like manner, Judge Myerscough in United States v. Price, 2012 WL 966971 (C.D. Ill. 2012), found that the production guideline "presents some of the same problems presented by" the non-production guidelines.  Id at *11.  She found that 2G2.1 was not the product of empirical study by the Commission and that the guideline "similarly applies enhancements present in nearly every production case . . . which skew offense levels upward such that the Guideline does not appropriately distinguish between the least culpable and

most culpable offenders." Id.   She concluded "[n]o one doubts that production and possession of child pornography are exceptionally serious crimes with victims who suffer permanent harm. . . . [h]owever, child pornography crimes fall within a spectrum.  It is the opinion of this Court that the harshest penalties should be reserved for the worst crimes." Id. at 12.

Finally, in United States v. Zauner, 688 F.3d 426, 430 (8th Cir. 2012), Circuit Judge Bright in a concurring opinion noted the defects which applied to both the non-production and production guidelines in a production case and found that "[i]n this area, the guidelines routinely place defendants near or over the statutory-maximum sentence, eliminating any meaningful distinction between the least and most culpable offenders" and concluded "in cases such as this, where the guidelines obviously do not fit, a sentencing judge should give careful assessment to the sentencing requirements of 3553(a) . ." Id at  431.

In Chapter 9 of its Report at page 247, the Commission addresses production cases and stated that  "[s]entencing in federal production cases has been less controversial than in non-production cases" with a footnote explaining that a small number of courts 'have been expressly critical of the production guideline" but concluding that "[t]hese courts appear to represent a minority of federal judges".  The Commission did not cite to any cases to support the statement that the critical cases are in the minority.  Instead, the Commission cited to an opinion survey of federal judges which asked whether or not the judges believed the

guidelines were appropriate. "72% responded that the guideline ranges for production offenses were generally appropriate."   Candidly, the footnote concluded by noting that "in the past two years, the percentage of below range sentences has noticeably increased in production cases (albeit well below the equivalent rate in non-production cases)." Federal Child Pornography Offenses, United States Sentencing Commission February 27, 2013,  p. 247 n 2.

It is not surprising that there are fewer cases attacking the production guidelines. There are fewer production cases (Report p. 261 n 51) and there is a sense that production cases deserve higher sentences than possession or distribution cases.   In 2010 the average sentence for production was twice the sentence for distribution and four times the sentence for possession.   Report, p. 268.    That being said, it does not change the fact that the guidelines are still defective as the courts above found and while the starting range for production may be higher, the spectrum of sentences applicable under the production guidelines is still just as narrowly skewed to the highest end as is true for the spectrum of sentences applicable under the non-production guidelines.

The Commission's own data supports the conclusion that several of the enhancements are applied in most cases and therefore inflate the already high base offense level.  The enhancement for the age of the victim (b)(1) has consistently been present in 90% of the

cases since 1996.  Report, p. 261.  Enhancement (b)(5) for the defendant's status as a parent has been applied in more than 50% of the cases since 1990.  Three enhancements have only been in effect since 2005.  Enhancement (b)(2) commission of a sexual act has been present in 90% to 70% of the cases from 2005 to 2010.   Enhancements (b)(3) distribution and (b)(4) sadistic or masochistic conduct have been present in 40% to 25% of the cases since 2005.  The (b)(6) enhancement for use of a computer or misrepresentation of identity has been applied in 26% of the cases since 2004.   Note that the low application of the guideline for distribution and use of a computer may very likely reflect the fact that recently courts are not applying these guidelines as demonstrated by the decisions described above.

The Commission's data also indicates the skewing of the guidelines toward the highest level.  The average prison sentence for production cases was 63.5 months in 1992.  The average increased to 282.9 months in 2009 and decreased slightly in 2010 to 267.1 months.  Id. P. 253.  The increase from 1992 to 2009 is a little more than 345%.

Notwithstanding this increase in average sentences, the sentences within the guideline range have steadily dropped since United States v. Booker, 543 U.S. 220 (2005).   The sentences within the guideline range have steadily dropped and the downward variances or departures has continued to increase.  Id. at 254.  As of 2011, in 50.4% of the cases the

6

sentence was within the guideline range and in 38.1% of the cases (excluding 5K departures) the sentence was below the guideline range.  Id.   In 2004, 84% of the sentences were in the guideline range.  In 2011 only 50.4% of the sentences were within the guideline range.

One significant factor which accounts for the increase in average sentences despite the steady decrease in following the guidelines is the exponential increase in the sentencing guideline offense levels and enhancements.   From 2004 to now, the average guideline minimum has increased from approximately 153.4 months in 2004 to approximately 269.1 months in 2010.  Id. p. 256 figure 9-6 and p. 268.  That is a 75.4% increase in the average guideline minimum in the past 6 years due to guideline "inflation".

What is most telling is the increasing gap between the average guideline minimum and the average actual sentence from 2009 until now.  Id. and p. 269.   As stated above, the departures and variances have consistently increased since Booker but the most dramatic increase in departures and variances began in 2009.  Id.  While the Report makes no reference to it, probably one of the most significant factors to explain the dramatic divergence away (lower) from the bottom guideline range  is the growing awareness and acceptance of the flaws in these guidelines by the Courts as represented by the 2009 decisions above and Dorvee in 2010.

In sum, the guidelines are defective and the courts are imposing sentences which reflect an awareness of those defects.

Respectfully submitted,


s/John K. Henderson, Jr.
JOHN K. HENDERSON, JR.
Sup. Ct. No. 19022
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: John_Henderson@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2013, I electronically filed the foregoing Defendant's Sentencing Memorandum Regarding Application of the Sentencing Guidelines with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Jason Hart
Assistant U.S. Attorney
301 N. Main, Suite 1200
Wichita, KS  67202

s/John K. Henderson, Jr.
JOHN K. HENDERSON, JR.
Sup. Ct. No. 19022
Assistant Federal Public Defender
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: John_Henderson@fd.org