IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS



UNITED STATES OF AMERICA

       Petitioner

    V.                       Case No. 6:12-cr-10174-JTM-1

PHILIP ANDRA GRIGSBY

       Defendant

## MEMORANDUM OF LAW AND ARGUMENTS
## PURSUANT TO 28 U.S.C. § 2255

COMES NOW the Defendant, Philip Grigsby requesting this Honorable Court to accept this memorandum to his 28 U.S.C.§2255 containing arguments to the Four Grounds of ineffective assistance of counsel being brought before this Honorable Court. Per 28U.S.C.§2255 Rule 2(c) Form instruction 5.

Respectfully Submitted,

Philip Grigsby

Ground 1

Ineffective Assistance of Counsel During Plea:

Mr. Grigsby informed Mr. Henderson (defense counsel) of his desire for a Jury Trial on three (3) seperate occasions, each time being discouraged by Mr. Henderson.

> United States v. Nahodil, 36 F.3d 323 (3rd Cir. 1994) (ineffective assistance claim stated where counsel allegedly advised defendant to plead guilty despite defendant's repeated objection to doing so).

Mr. Hart (prosecutor) offered Mr. Henderson a plea via e-mail of 60 years and he would not pursue a superceding indictment. Mr. Grigsby refused this verbal offer. Mr. Henderson advised Mr. Grigsby to plead guilty to two (2) counts (Dkt. 30) and would ask for 25 to 30 years.

> Padilla v. Kentucky, 559 U.S. 356, 373, 130 S. Ct. 1473, 176 L.Ed.2d 284, 296-97 (2010) (affirmative misadvise by an attorney and a failure to advise about the advantages of a guilty plea are treated the same when assessing whether counsel's performance was deficient.)

Immediately following the Judge's tentative sentence of 260 years, Mr. Grigsby informed Mr. Henderson of his desire to withdraw his guilty plea to which Mr. Henderson advised Mr. Grigsby he could not withdraw a plea. Mr. Henderson failed to advise Mr. Grigsby of federal rules concerning his desire to withdraw the guilty plea, Fed.R.Crim.P. 11(d)(2)(B)(e) - Rule 11. Pleas:  (d) Withdrawing a Guilty or Nolo Contendre Plea. A defendant may withdraw a plea of guilty or nolo contendre: (2) after the court accepts the plea, but before it imposes

2

sentence if:

(B) the defendant can show a fair and just reason for requesting the withdrawl.

(e) Finality of a Guilty or Nolo Contendre Plea. After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendre, and the plea may be set aside only on direct appeal or collateral attack.

> Beckham v. Wainwright, 639 F.2d 262, 267 (5th Cir. 1981) (ineffective assistance where attorney failed to advise defendant of the available options and possible consequences of pleading guilty or going to trial).
> "The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel." Miller v. Champion, 161 F.3d 1249, 1253 (1998). First, "the defendant must show that counsel's representation fell below the standards of reasonableness." Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct.2052, 80 L.Ed.2d 674 (1984); Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 266, 88 L.Ed.2d 203 (1985). This inquiry "is necessaryily linked to the practice and expectations of the legal community." Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong.: Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). But "[a] fair assessment of attorney performance requires [us] ... to evaluate the conduct from counsel's perspective at the time." Strickland, 446 U.S. at 689.
> The defendant must show that a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Taht requires a "substantial," not just "conceivable," likelihood of a different result. Cullen v. Pinholster, 131 S. Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (quoting Strickland

3

and <u>Harrison v. Richter</u>, 131 S. Ct. 770, 786,
178 <u>L.Ed.2d 624 (2011)</u>) (internal quotation
marks and citations omitted). In the context
of a plea agreement, prejudice means a
"reasonable probability" that the defendant
"would not have pleaded guilty and would have
insisted on going to trial" but for councel's
errors.

Although Mr. Grigsby does not assert innocence, Mr.
Grigsby claims (1) his plea was not knowing and voluntary,
and (2) he did not receive effective assistance of counsel
with repect to it. Mr. Grigsby contends his guilty plea was
not knowing and voluntary due to being led to believe that he
had no other choice by being told the outcome of a Jury Trial
could be much worse than a guilty plea. "The primary
considerations for determining whether a fair and just reason
exists are whether the defendant (1) knowingly and voluntarily
pled guilty, (2) had assistance of counsel relating to the
decision to plead guilty, and (3) has asserted his innocence.
<u>United States v. Hamilton</u>, 510 F.3d 1209, 1214 (10th Cir.
2007)." Mr. Henderson failed to inform Mr. Grigsby of federal
codes and rules available to defence. Mr. Henderson's erroneous
decisions and failure to advise Mr. Grigsby deprived Mr. Grigsby
of the Jury Trial he asked for several times.
"<u>Cronic</u>, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L.Ed.2d 657
(1984). One situation in which prejudice under <u>Strickland</u> will
be presumed is when "counsel entirely fails to subject the
prosecution's case to meaningful adversarial testing."

4

Ground 2

Ineffective Assistance of Counsel to Qualify an Expert Witness

Dkt. 14 at 2 and 3 "GENERAL ORDER OF DISCOVERY AND SCHEDULING" states the government shall produce any and all evidence in its possession which would constitute impeachment of government witnesses. This includes and is not limited to (4) any prior conviction of any government witness, which involved dishonesty or false statement. (6) Any specific instances if the conduct of any government witness which would tend to show character for untruthfulness. (Dkt. 14 at 5) "instructs counsel to file a designation of expert" which was never filed or argued.

> Hoots v. Allsbrook, 785 F.2d 1214, 1221 (4th Cir. 1986) (Counsel must ordinarily "investigate possible methods for impeaching prosecution witnesses"). See Fed. R. Evid. 607, "Any party, including the party that called the witness, may attack the witness' credibility." Fed. R. Evid. 608(a)(in part), "A witness' credibility may be attacked by testimony about the witness' reputatin for having a character for truthfulness or untruthfulness."

Fed. R. Evid. 609(a)(2);(a)(in part), "The following rules apply to attacking a witness' character for truthfulness by evidence of a criminal conviction: (2) For any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving a dishonest act or false statement." Both these rules apply to Mr. Lemuz's 2011 conviction.

Government expert witness Jesse J. Lemuz, Jr. testified

on two (2) occasions. (Dkt.62) Evidentiary hearing held on March
28, 2013 and (Dkt.97) Restitution Hearing held on July 29, 2013.
See (Dkt.69 at 4 and 5), "The government introduced the testimony
of Jesse Lemuz, a licensed master of social work and alleged
certified therapist at St. Francis Community Services, who
testified about his experiences in meeting with the minor victim.
Lemuz extensively discussed his own communications with the victim,
and his assessment of the victim's mental state. While the
testimony includes a glancing reference to two subsequent meetings
between the victim and Jane Holzrichter of Horizons Mental Health,
those meetings formed no part of Lemuz's assessment. Lemuz in fact
expressly stated that he did not know the results of Holzrichter's
assessment of the victim.", "The government initially asked Lemuz,
'Are you aware of any issues related to her schooling or function
in school?' Lemuz actually indicated that the impact of the abuse
had not manifested itself in poor schoolwork, stating, 'Her issues
at school behaviorally have been relatively minor.'", "'And as far
as you know is she doing well in school?' When Lemuz responded
that there might have been some impact on the victim's grades,
counsel asked 'Do you know what her grades are?' and Lemuz
responded that he did not directly recall them." Mr. Grigsby's
restitution hearing was rescheduled four (4) times as seen in
(Dkt.77, 87, 92, 93, 94, and 96) taking note of (Dkt.93 at 1) where
the prosecution states "Jesse Lemuz, a witness necessary for the
hearing." (Dkt.88 at 11) the prosecution states "The information
I have is from Jesse Lemuz and I'm not sure that I quite understand

the spreadsheet as far as what would be the ultimate cost associated with that. (Restitution). (Dkt.64, 64, 68, and 69) all pertain to Jesse Lemuz's testimony yet have been sealed and denied access to Mr. Grigsby along with transcripts, see (Dkt.103, 107, and 116). Also note (Dkt.64 and 69) have been removed from the docket leaving (Dkt.65 and 68) that both refer to the missing (Dkt.64). Mr. Grigsby contents that Mr. Lemuz's lack of expert qualifications were used by the prosecution to prejudice Mr. Grigsby to the court.  Mr. Grigsby requested Mr. Henderson investigate Mr. Lemuz as an expert witness on several occasions to which Mr. Henderson refused.  Strickland v. Washington, 466 U.S. 688, 691, 80 L.Ed.2d 674 (1984) "Counsel has a duty to make reasonable investigations or to make reasonable decisions."

Jesse J. Lemuz, Jr. was found guilty of working outside his license as practicing psychology in 2011. (Kansas Behavioral Sciences Regulatory Board v. Jesse J. Lemuz, Jr. (2/28/2011), case no. 11-MS-0045), quoting "At all times relevant to this order, Jesse J. Lemuz, Jr. has not possessed any license issued by the Kansas Behavioral Sciences Regulatory Board that would permit the independent practice of social work or psychotherapy without spervision." "Mr. Lemuz marked yes on the license renewal form, stating that he was currently working in a private practice setting without supervision as conducting psychotherapy." "Mr. Lemuz denied that he was providing mental health services in a private setting, yet he was the sole therapist and principal of 'Therapy Works', a private clinic." "Mr. Lemuz is not and has

7

never been licensed to practice social work or psychotherapy independently without supervision in Kansas." "The independent clinical practice of social work or psychotherapy requiers a level of licensure Mr. Lemuz does not possess" pursuant to:

> K.S.A. 65-6301: Purpose. Since the profession
> of social work profoundly affects the lives
> of the people of this state, it is the
> purpose of this act to protect the public by
> setting standards of qualification, training
> and experience for those who seek to engage in
> the practice of social work.
> K.S.A. 65-6303: Prohibited acts; penalty. (c)
> Nothing in this act shall be construed to
> permit the practice of psychotherapy by
> anyone who does not have a baccalaureate
> degree in social work or a related field
> except that those practicing psychotherapy
> without a baccalaureate degree in social work
> or related field prior to July 1, 1974, shall
> not be prohibited from so practicing after the
> effective date of this act. (d) Any violation
> of this section shall construe a class B
> misdemeanor.
> K.S.A. 65-6306: Qualifications for licensure;
> baccalaureate social worker; master social
> worker; specialist clinical social worker. (1)
> Has a baccalaureate degree form an accredited
> college or university, including completion of
> a social work program recognized and approved
> by the board, pursuant to rules and
> regulations adopted by the board. (3)(b) The
> board shall issue a license as a master social
> worker to an applicant who: (1) has a master's
> degree from an accredited college or university,
> including completion of a social work program
> recognized and approved by the board, pursuant
> to rules and regulations adopted by the board.
> (4)(d)(1) The board shall issue a license as
> a specialist clinical social worker to an
> applicant who: (A) has met the requirements of
> subsection (c); (c) supporting diagnosis or
> treatment of mental disorders with use of the
> American Psychiatric Association's diagnostic
> and statistical manual, through identifiable
> study of the following content areas:
> psychotherapy, diagnostic assessment,
> interdisciplinary referral and collaboration,

treatment approaches and professional ethics.
K.S.A. 65-6308: Limitation on private practice
of social work; penalties. (a) No person shall
engage in private, independent clinical
practice of social work unless such person:
(1) Is licensed under this act as a specialist
clinical social worker or specialist social
worker; (b) Any violation of this section shall
constitute a class B misdemeanor.
K.S.A. 65-6310: Unlawful acts; penalties.
Conviction of any of the following shall
constitute a class B misdemeanor: (b)
Knowingly making a false statement on any form
promulgated by the board in acordance with the
provisions of this act or the rules and
regulations promulgated thereunder.
K.S.A. 65-6319: Diagnosis and treatment of
mental disorders by certain licensed social
workers authorized. The following licensed
social workers may diagnose and treat mental
disorders specified in the edition of the
diagnostic and statistical manual of mental
disorders of the American Psychiatric
Association designated by the board by rules
and regulations: (a) A licensed specialist
clinical social worker, and (b) a licensed
master social worker who engages in the
practice of social work only under the
direction of a licensed specialist clinical
social worker, a licensed psychologist, a
person licensed to practice medicine and
surgery or a person licensed to provide mental
health services as an independent practitioner
and whose licensure allows for the diagnosis
and treatment of mental disorders.

With the same license Mr. Lemuz testified as to

psychological prognoses and diagnoses in Mr. Grigsby's case again

outside his license. Mr. Henderson failed to properly cross

examine Mr. Lemuz and failed to confirm the credibility of Mr.

Lemuz's statements or character.

Dahlberg v. MCT Transp., LLC 7/8/14 (10th Cir
App.) A party who seeks to introduce an expert
opinion into evidence must provide a written
disclosure to the other side that contains "a
complete statement of all opinions the witness
will express and the basis and reasons for them."

These requirements are mandatory and self-executing, this means that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (c), the party is not allowed to use that information or witness."

> <u>Dale v. Barker Co., P.C. v. Plaza</u> (9/17/2013) (10th Cir. App.) If an expert report does not disclose a single expert opinion, as required by Fed. R. Civ. P. 26 a district court has discretion to prohibit the expert from testifying as an expert as a result. Fed. R. Civ. P. 26(a)(2)(B)(i). Even experts who are not required to file reports still need to disclose a summary of the facts and opinions to which they are expected to testify. Rule 26(a)(2)(C)(ii). <u>Morton v. Progressive Northern Ins. Co.</u> (10/10/2012)(10th Cir. App.) The consequence of failing to comply with Rule 26(a)(2) is the mandatory exclusion of the expert's testimony. Fed. R. Civ. P. 37(c)(1). The "duty to disclose as an expert is not excused when a witness who will testify as a fact witness and as an expert witness is disclosed as a fact witness." <u>Tribble v. Evangelides</u>, 670 F.3d 753, 759 (7th Cir. 2012). "Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report." Id. at 759-60, Fed. R. Crim. P. 16 "requires an expert witness to disclose, in some circumstances, the witness' opinions, the basis and reasons for these opinions, and the witness' qualification (b)(1)(C)(i)."

Mr. Grigsby contends his constitutional rights of due process were violated by the ineffectiveness of Mr. Henderson's counsel. Furthermore, Mr. Grigsby contends a reasonable jury would find reasonable doubt in the statements of Mr. Lemuz and any decisions made by Mr. Lemuz to include restitution if Mr. Henderson would have properly investigated and cross examined Mr. Lemuz.

Ground 3

Ineffective Assistance of Counsel to Argue Evidence:


   Mr. Grigsby requested Mr. Henderson acquire and use reports

and statements from the minor victim as evidence to defend Mr.

Grigsby's charges to the low end of the sentencing guidelines.

Mr. Henderson informed Mr. Grigsby that the court would not allow

statements from the victim. 18 U.S.C. §3771(a)(4), a crime victim

has "[t]he right to be reasonably heard at any public proceeding

in the district court involving release, plea, sentencing, or any

public proceeding"... It is apparent that a victim has the right

to speak at sentencing about the impact a defendant's criminal

conduct has had upon her without being placed under oath and cross

examined just as a defendant has the right to allocute in

mitigation of sentence. As noticed by the prosecution in (Dkt.

69 at 6) where it is pointed out that Mr. Henderson failed to

mention this code.

                    (Quoting Josephine A. Bulkley, The impact of
                    New Witness Research on Sexual Abuse
                    Prosecutions, in Perspectives on Children's
                    Testimony 208, 226 (S.J. Ceci ed. 1989)
                    ("Studies indicate that in many cases of
                    sexual abuse, younger children's honesty
                    combined with lack of cognitive abilities may
                    make them more credible witnesses.")) and
                    (quoting Joyce A. Adams, The Role of the
                    Medical Evaluation in Suspected Child Abuse,
                    in True and False Allegations of Child Sexual
                    Abuse 231, 239 (Tara Nev Ed., 1995) ("[T]he
                    child's statement is the most important
                    evidence of molestation.")) (Maryland v. Craig,
                    497 U.S. 836, 111 L. Ed. 2d 666, 110 S. Ct.
                    3157 (1990) holds that a state may allow child

> witnesses in abuse cases testify outside the
> presence of the defendant if "necessary to
> protect a child witness from trauma").

The prosecution and probation offices referred to
contradictory evidence in several documents and videos.  The
initial FBI interview of the minor victim revealed no sexaul
abuse by Mr. Grigsby as seen in the FBI interview video taken
July 17, 2012 and (Dkt.57 at 6)(PSR). Again as stated in (Dkt.57
at 8) a second interview of both Mr. Grigsby's children revealed
no sexual abuse, also in (Dkt.57 at 6 and 7)(PSR) the sexual
abuse examiner states the minor victim's hymen as smooth and
uninjured indicating "virginity" (no actual penetration):

From the Journal of the American Medical Association:
> Hymen: A thin, elastic membrane stretched
> partly or completely across the entrance of
> the vagina (vestibule). The hymen can be
> broken in the normal course of physical
> activities when the body is stretched
> strenuously, as in athletics, sports or
> exercises.  It may be absent, small, thin
> and pliant, or, more rarely, tough and dense,
> completely blocking the vaginal entrance; it
> varies in size, shape and thickness from
> woman to woman. The vagina of a virgin and
> the vagina of someone who has lost their
> virginity are the same, all except the hymen.
> Girls who have had sex don't have a hymen
> anymore.  Girls who haven't had sex still
> have theirs.

Continuing in (Dkt.57 at 7)(PSR) the minor victim's statement
that Mr. Grigsby never placed his penis inside her body in any
way, or at any time (no actual penetration). In (Dkt.61 at 4) the
prosecution states that the minor victim was smiling in the
pictures indicating that they were staged and choreographed, also
in (Dkt.61 at 8) the prosecution confirms the victim's statement

that Mr. Grigsby never hurt her, <u>Parker v. Scott</u>, 394 F.3d 1302, 1315 (10th Cir. 2005)(addressing child victim testimony in sexual abuse cases and stating: 'It is axiomatic that the responsibility of adjudging the child's credibility belongs to the trier of fact, not to the Government").

Mr. Grigsby contends the pictures in his possession of the minor victim were simulated (The Supreme Court clarified that the meaning of "simulated sexual intercourse" is "sexual intercourse that is explicitly portrayed" such that the "portrayal must cause a reasonable viewer to believe that the [participants] actually engaged in that conduct on camera," even though sexual intercourse did not occur). <u>United States v. Williams</u>, 553 U.S. 285, 297, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008), thus could be held at the lower end of the sentencing guidelines to which Mr. Henderson refused to argue even the facts confirmed by the prosecution, furthermore Mr. Henderson refused to argue a statement by the Judge that the court would decide if there was penetration by viewing the pictures.

Mr. Henderson also failed to sufficiently argue the fact that the minor victim was engaging in sexual chats on her own and receiving sexual instructions from others as verified by the probation office in (Dkt.57 at 4 and 28)(PSR) also in (Dkt.58 at 7 and 8).

Fed.R.Evid.412(b) states: (1) the court may admit the following evidence in a criminal case: (b)(1)(C) evidence whose exclusion would violate the defendant's constitutional rights.

Mr. Grigsby contends that Mr. Henderson violated his Fifth
Amendment right to Due Process and his Sixth Amendment right to
Compulsory Process by not arguing evidence of the minor victim's
sexual behavior under Federal Rules of Evidence 412, "In
determining the admissability of a victim's other sexual behavior
under Rule 412(b)(1)(C), we start with the premise that
defendants have a constitutional right under the Fifth and Sixth
Amendments to introduce evidence in their defense." United States
v. Pumpkin Seed, 572 F.3d 552, 559 (8th Cir. 2009), Mr. Henderson
violated Mr. Grigsby's 5th and 6th constitutional rights by not
informing Mr. Grigsby of the federal rules and case law that
could have been used as a defense in his case.  Mr. Henderson was
aware the prosecution instructed the FBI to remove the minor
victim from school without her mother's permission or counsel
present and questioned the minor at an undisclosed location, yet
did not use any victim statement in court. Mr. Grigsby contends
a reasonable jury would find doubt in the statements and evidence
mentioned in the above Ground 3 Ineffective Assistance complaint.
Quoting Templar: (Infra)

> "When all evidence in the case, carefully
> analyzed, compared and weighted by you,
> produces in your minds a settled conviction
> or belief of the defendant's guilt, such a
> conviction as you would be willing to act
> upon in matters of highest importance
> relating to your own affairs, when it leaves
> your minds in an abiding conviction amounting
> to a moral certainty of the truth of the
> charge, then, and in that event you would be
> free from a reasonable doubt (Templar v. State,
> 494 F.2d 667 (Okl.Ct.Crim.App.1972))." 444
> F.2d 619;: United States v. Fletcher, June 7,
> 1971, 513 F.2d 969:; Young v. Anderson:; April
> 24, 1975.

14

Ground 4

Ineffective Assistance of Counsel by John K. Henderson Jr.


1.) Mr. Henderson failed to offer Mr. Grigsby the choice of

a polygraph, a complete psychological evaluation, or a

psychosexual evaluation pursuant to 18 U.S.C. §3552(b) (c)

> (b) Presentence study and report by Bureau
> of Prisons. If the court, before or after
> its reciept of a report specified in
> subsection (a) or (c), desires more
> information than is otherwise available to
> it as a basis for determining the sentence
> to be imposed on a defendant found guilty
> of a misdemeanor or felony, it may order a
> study of the defendant.
>
> (c) Presentence examination and report by
> psychiatric or Psychological examiners. If
> the court, before or after its reciept of
> a report specified in subsection (a) or
> (b) desires more information than is
> otherwise available to it as a basis for
> determining the mental condition of the
> defendant, the court may order the same
> psychiatric or psychological examination
> and report thereon as may be ordered
> under section 4244(b) of this title [18
> USCS §4244(b)].

as noted by the prosecution in (Dkt.61 at 28, 29).

2.) Mr. Henderson failed to appeal issues such as Mr.

Grigsby's conviction, supervised release, forfeiture of

property, restitution, amended Judgement, all reffered to

by the 10th circuit court of appeals (Dkt.133 at 3, 4, 6, 9,

12, 13, and 15).

> Thomson v. United States, 504 F.3d 1203
> (11th Cir. 2007) (Attorney's failure to
> adequately consult with defendant
> regarding an appeal was ineffective
> assistance). Mason v. Hanks, F.3d 887,

15

> 894 (7th Cir. 1996) (ineffective assistance
> where counsel failed to raise obvious
> issues on appeal). <u>Stallings v. United
> States,</u> 536 F.3d 624, 627 (7th Cir. 2008)
> (In assessing whether an attorney was
> ineffective for failing to present an issue,
> courts look first to see if the attorney
> missed a "significant and obvious" issue;
> if so, the court compares the neglected
> issues to those actually raised; if the
> ignored issues were clearly stronger, then
> appelate counsel was deficient.

3.) Mr. Henderson failed to argue the order of forfeited

property with reference to (Dkt. 48) "MOTION FOR PRELIMINARY

FORFEITURE ORDER" item C (Logitech webcam) no evidence used

against Mr. Grigsby contained any images taken with a webcam.

Item D (Hughes HN9000 Modem) is the property of Hughesnet,

Mr. Grigsby's internet provider, thus should have been

returned to them, also listed is an ethernet hub and wireless

router, niether was necessary to facilitate the crimes

charged. Item G (Panasonic VHS video camera) no illegal VHS

tapes were found in Mr. Grigsby's possession. Item H

(Polaroid DVD player) this device has no memory capabilities

and there were no illegal DVD disks found in Mr. Grigsby's

possession. Item L Simple Tech external hard drive) did not

contain any illegal images or files. Item M (46 CD's) these

were computer disks "software" used to operate Mr. Grigsby's

business, employment, and games. Mr. Grigsby contends the

stated items from (Dkt. 48) are used by the prosecution to

prejudice the court against Mr. Grigsby to which Mr. Henderson

refused to argue any discrepancies in (Dkt. 48) and allowed

irrelevent evidence to be presented again prejudicing the

16

court as seen in:

> Rule 401. Test for Relevant Evidence:
> Evidence is relevant if: (a) it has any
> tendency to make a fact more or less
> probable than it would be without the
> evidence; and (b) the fact is of consequence
> in determining the action.
> Rule 403. Excluding Relevant Evidence for
> Prejudice, Confusion, Waste of Time, or
> Other Reasons. The court may exclude
> relevant evidence if its probative value
> is substantially outweighed by a danger of
> one or more of the following: unfair
> prejudice, confusing the issues, misleading
> the jury, undue delay, wasting time, or
> needlessly presenting cumulative evidence.
> Rule 901. Authenticating or Identifying
> Evidence: (a)**In General.** To satisfy the
> requirement of authenticating or identifying
> an item of evidence, the proponent must
> produce evidence sufficient to support a
> finding that the item is what the proponent
> claims it is. (b)**Examples.** The following are
> examples only-not a complete list-of
> evidence that satifies the requirement.
> (4)**Distinctive Characteristics** and **the like.**
> The appearance, contents, substance, internal
> patterns, or other distinctive characteristics
> of the item, taken together with all the
> circumstances.

4.) Mr. Grigsby contends Mr. Henderson refused to argue the fact that Mr. Grigsby was eligible to possess firearms under Kansas State laws.

> Kansas law, K.S.A. 21-4204(a) (4) makes it
> unlawful for a person to possess any firearm
> within ten (10) years of conviction or
> release from imprisonment if that person
> has: 1) been convicted of one of the below
> listed felonies (K.S.A. and brief offense
> description are provided); and 2) was not
> found to have been in the possession of a
> firearm at the time of the commission of
> the offense. (K.S.A. 21-3410 Aggravated
> assault) and (K.S.A. 21-3414 Aggravated
> battery) K.S.A. 21-6304. Criminal possession
> of a firearm by a convicted felon. (a)
> Criminal possession of a firearm by a

> convicted felon is possession of any firearm
> by a person who: (1) Has been convicted of a
> felony. (3) Within the preceding 10 years,
> has been convicted of a: (b) of 21-5807, and
> amendments thereto: K.S.A. 21-3410, K.S.A.
> 21-4314. Once the appropriate ten (10) year
> period had elapsed or the person is pardoned
> or their record expunged, said person is no
> longer in violation of Kansas' law for
> possessing a firearm. At this point, they
> are also no longer in violation of Federal
> law for possession of a firearm provided
> they do not have felony convictions from
> other states or from Federal court.

Under said State law Mr. Grigsby was eligible to vote, hold

office, be called for Jury duty, and possess firearms for

recreational purposes.

> Congress regularly and uncontroversially
> requires individuals who are doing nothing,
> see ante, at_____, 183 L.2d. at 475, to
> take action. Examples include Federal
> requirements to report for Jury duty, 28
> U.S.C. §1866 (2006 ed., Supp. IV), to
> register for selective service, 50 U.S.C.
> App. 3453; to purchase firearms and gear
> in anticipation of service in the Militia,
> 7 Stat. 271 (Uniform Militia Act of 1792);
> and to file a tax return, 26 U.S.C. §6012
> (2006 ed., Supp. IV), Mr. Grigsby has
> followed all the above requirements of
> Congress as an American citizen while also
> adhereing to the "Firearms Owner's
> Protection Act", 1986, Pub. L. 99-308,
> §104 and the Public Safety and Recreation
> Firearms Protection Act", 1994, Pub. L.
> 103-322, §110102.

See also United States v. Reese (5/23/2014) (10th Cir. app.),

United States v. Gomez (3/9/1990) (9th Cir. app.) and United

States v. Cassidy (11/14/1989) (6th Cir. app.) where convicted

felons in possession of firearms had their convictions

vacated due to the recovery of their civil rights. Mr. Henderson

18

also failed to argue why Mr. Grigsby received the maximum
sentence for possessing a firearm, when simply they were found
in the residence where he resided along with an abundance of
hunting equipment, were not in his physical possession, no
crime was committed with any firearm (past or present), Mr.
Grigsby's wife admitted the firearms belonged to her as seen
in (Dkt.57 at 23). Also pertaining to the firearm charge was
an instance during Mr. Grigsby's Evidentiary Hearing where
Mr. Hart openly led and attemted to coerce the lead special
agent with the FBI (Rebecca Martin) about her knowledge of
ammunition and a reloading station in Mr. Grigsby's residence
to which agent Martin replied she did not remember seeing
ammunition and a reloading station, yet took six (6) pictures
of the ammunition and reloading station as evidence, Mr. Hederson
refused to cross examine agent Martin on this issue as seen in
the court transcripts, (noting Mr. Grigsby was denied access to
transcripts in order to prepare his 28 U.S.C. §2255 motion as
seen in (Dkt. 103 and Dkt. 107)). Dkt. 48 item Q (Chinese
Model SKS s/n 3175967) is listed in (Dkt. 1) "COMPLAINT" (count
4) as unknown bolt action rifle yet in (Dkt. 9) "INDICTMENT"
(count 4) the same serial numbered firearm is listed as an SKS
(assault rifle), assault rifles and bolt action rifles are very
different and cannot be confused.

   5.)  Mr. Henderson failed to argue during direct appeal the
length of Mr. Grigsby's sentence that should have been in
question for the reason that Mr. Grigsby's sentence of 260 years

19

is far greater than similar cases prosecuted in the tenth circuit
as seen in:

> United States v. Freerkson (10th Cir. 2012)
> where an 11 year old victim was penetrated by
> her biological mother (Alicia Freerkson) in
> preparation for her step-father (Dean Freerkson)
> to rape her. Mr. Freerkson took pictures of the
> 11 year old victim while he was raping her.
> Mr. Freerkson's prior criminal history includes
> 2005 child stealing, 2007 assault and battery,
> 2008 lewd molestation, with an offense level
> of 49 and a criminal history category of
> IV. Mr. Freerkson was sentenced to 50 years
> in prison and Ms. Freerkson was sentenced to
> 10 years in prison . Also as seen in United
> States v. Byrum (10th Cir. 2009) Jimmy Byrum
> was indicted on eight counts of sexual
> exploitation of a minor. Mr. Byrum used a
> digtial camera to take pictures of his six
> year old granddaughter while he performed
> sexual acts upon her and stored the pictures
> on his computer. Mr. Byrum was sentenced to
> 180 months in prison followed by 5 years of
> supervised release. Thus again in Wing v.
> Janeca (10th Cir. 2013) Donald Wing produced
> videos of himself engaging in sexual acts
> with his four year old granddaughter and
> saving them on his computer. Mr. Wing was
> sentenced to 87 years in prison for 21 counts
> of sex crimes against children.

All these cases were as severe or more so than  Mr.
Grigsby's charges, yet they were pled lower with some charges
dropped and shorter sentences.

> An 18-year term of impriosnment wasn't
> substantively unreasonable for a defendant
> who produced and posted pornographic images
> of his own daughter even though the U.S.
> Sentencing Guidelines recommended more than
> 40 years, the U.S. Court of Appeals for the
> Seventh Circuit held Dec. 5. (United States
> v. Price, 2014 BL 342359, 7th Cir., No. 12-1630,
> 12/5/14). The case the court just decided
> features several factors  that made it more
> serious than the run-of-the-mill pornography
> case: (1) the defendant was convicted not
> only of possessing but also producing child

pornography, (2) he produced pornographic
images of his own prepubescent daughter,
(3) he posted the images on the internet
in an effort to make money with them, (4)
he repeatedly molested his daughter and
his sister, (5) he had a prior, misdemeanor
conviction for soliciting a sex act, and
two DUI arrests, and (6) the sentencing
judge found that the defendant refused to
accept responsibility for his actions and
was likely to victimize young girl in the
future. The Seventh Circuit emphasized that
the judge took all these facts into account
when she considered the general sentencing
factors set out in 18 U.S.C. §3553(a).

In Kimbrough v. United States, 552 U.S. 85, 82 CrL 275

(2007), the U.S. Supreme Court indicated that sentencing

guidelines that aren't the product of the U.S. Sentencing

Commissions empirical data and national experience are entitled

to less deference than those that are. (Citing United States v.

Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984)),

cert. denied, 489 U.S. 1089, 109 S. Ct. 1554, 103 L.Ed. 2d 857

(1989). To prevail on a claim of ineffective assistance of

counsel, petitioner must show that (1) his counsel's performance

fell below an objective standard of reasonableness, Strickland v.

Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L.Ed.2d

674 (1984), and (2) "There is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding

would have been different.

21

## CERTIFICATE OF SERVICE

I hereby certify that on or about  May 13, 2015 , 2015 that
a true and correct copy of this "MEMORANDUM OF LAW AND ARGUMENTS"
(MOTION UNDER 28U.S.C.§2255) was sent out through the mail,
Registered, Return Receipt, from the UNITED STATES PENITENTIARY
TUCSON, Tucson, Arizona, to the Clerk of the United States District
Court for the District of Kansas, Wichita, and copies sent to the
following:

        Original and 2 copies sent to:

        Clerk of Courts
        United States Courthouse
        401 N. Market St.
        Wichita, KS 67202-2000


I, Philip Grigsby, declare under penalty of purjury that the
foregoing is true and correct, and this petition was placed
in the prison legal mail services on,  May 13, 2015            ,
as provided under Title 28 U.S.C. § 1746.



                            Respectfully Submitted,


                            Philip Andra Grigsby
                            #22325-031
                            USP Tucson
                            P.O. Box 24550
                            Tucson, AZ 85734

Dear Clerk of the Court:                    Date: May 13, 2015

    United States District Court

    for the District of Kansas


    Please file "MEMORANDUM OF LAW AND ARGUMENTS" (MOTION
UNDER 28 U.S.C.§2255) in the perspective Court to be heard for
judgement/order.

    Please send all correspondences to me directly.


    Thank you for your service.



                Respectfully,

                Philip Grigsby

                22325-031

                USP Tucson

                P.O. Box 24550

                Tucson, AZ 85734

Philip Grigsby 22325031
United States Penitentiary
P.C. Box 24550
Tucson, Az. 85734



⇔22325-031⇔
Clerk Of Courts
United States Courthouse
401 N Market ST
Room 204
Wichita, KS 67202-2000
United States

2 of 2

RECEIVED
MAY 18 2015
CLERK, U.S. DIST COURT
WICHITA, KANSAS 67202