IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

    Plaintiff,

    vs.                                 Case No. 12-10174-JTM

Philip Andra Grigsby,

    Defendant.

MEMORANDUM AND ORDER

This is a criminal action in which the defendant Philip Grigsby was convicted of multiple child sex offenses, and on May 21, 2013, the court sentenced Grigsby to 260 months imprisonment. (Dkt. 78). The court also ordered the payment of substantial restitution. (Dkt. 98).

After discovering that the defendant held a substantial interest in a vested union pension plan, the government sought and obtained from the Clerk of the Court an Amended Writ of Garnishment as to the plan. Several motions are now before the court, the most important of which is Grigsby's Motion to Cease and Reverse All Garnishment Actions (Dkt. 191), which is predicated on the Tenth Circuit's recent decision in *United States v. Martinez,* 2015 WL 9009626 (10th Cir. Dec. 16, 2015). In *Martinez,* the Tenth Circuit

held that, where the original restitution order authorizes payments by installment rather than payable immediately and in full, the government may not independently garnish proceeds of the defendant's retirement account pursuant to 18 U.S.C. § 3572. The Tenth Circuit concluded that such government-initiated garnishment "conflicts with the statutory scheme's directive for the district court to impose a payment schedule that reflects a defendant's financial condition." 2015 WL 9009626 at *5. Since the restitution order in that case provided for installment payments, and the defendant remained current on his payments, the Tenth Circuit concluded that "the government cannot enforce the restitution order beyond the monthly payment schedule." *Id.* at *4.

The government's response attempts to semantically distinguish *Martinez* on the grounds that the restitution order in that case was deemed as fixed:

> The Court of Appeals recognized that the "no less than" phrase in the written judgment created "minimum payments." *See Martinez*, Footnote 3. The Court then went on to say that it considered the *Martinez* order a fixed amount order and, therefore, was not considering the "not less than" phrase in making its decision.

(Dkt. 197, at 9).

The court finds unpersuasive the government's proffered distinction. Contrary to the government's interpretation, it does not appear that the characterization of the installments as "fixed" rather than a "minimum payment" plan was the essential basis for the Tenth Circuit's opinion. The Tenth Circuit stressed that while the district court orally imposed a fixed monthly amount of 25% of the defendant's monthly income, its written judgment "changed the reference from a fixed amount to a minimum payment of '*no less*

2

*than* 25%.'" at *2. Under Tenth Circuit precedent, when there is a conflict between an oral pronouncement of sentence and a subsequent written judgement, the former controls. *Id.* at *3 (citing *United States v. Marquez*, 337 F.3d 1203, 1207 n. 1 (10th Cir.2003)). In the footnote emphasized by the government, the Tenth Circuit merely observed that, in resolving a subsequent motion to quash, the district court in that case had transposed this controlling presumption, and thus "incorrectly relied on the restitution order as memorialized in the written judgment (as minimum payments), rather than as recited in the oral pronouncement (as a fixed percentage of Mr. Martinez's disposable income)." 2015 WL 9009626, at *3 n. 3.

It does not appear that the fixed installment/minimum payment distinction was essential to the Tenth Circuit's decision. Rather, the court observed that "Nothing in the oral pronouncement suggests that the district court intended to make the full restitution amount due immediately." *Id.* at *3. The same is true in the present case.

In Footnote 4, the *Martinez* court observed:

> Although our precedents preclude us from considering the written "no less than" phrase as part of the restitution order, we can consider the written judgment to the extent that the judgment does not conflict with the oral pronouncement. *See United States v. Young*, 45 F.3d 1405, 1417 (10th Cir.1995) ("[T]he oral pronouncement of sentence controls over any ambiguity created by the slightly different language of the written judgment."). *The "Schedule of Payments" section does not conflict with anything in the oral pronouncement.*

Id. at *3 n. 4 (emphasis added). In other words, the court did not consider the distinction between the type of installments as fundamental.

What was fundamental was the fact that, in the check-the-box Schedule of Payments

3

section of the written judgment, the court only checked the boxes for installment payments, and not the box providing for payment "[i]n full immediately." *Id.*

> By leaving the first box [providing for payment] blank, the district court declined to order immediate payment of the full restitution amount. *See United States v. Carter*, 742 F.3d 440, 444 (9th Cir.2014) (per curiam) (concluding that the judgment did not require restitution as part of supervised release conditions, in part because the district court had not checked the box requiring restitution).
>
> * * * *
>
> Based on the district court's oral pronouncement and the "Schedule of Payments" section of the written judgment, we interpret the restitution order to require Mr. Martinez only to make monthly installment payments of 25% of his net disposable income. As long as Mr. Martinez complies with this order, the full restitution amount would not become immediately due.

*Id.*

These observations are true in the present case as well. During the sentencing hearing and in the written Schedule of Payments, the court only provided for installment payments. At the hearing, the court contemplated that Grigsby would pay a "percent of whatever is deposited into his inmate trust fund account every month." (Dkt. 97, at 8). In the Schedule of Payments, the court marked the following boxes:

A ☐   Lump sum payment of $ due immediately, balance due. . .

B ☒   Payment to begin immediately (may be combined with ☐ C ☐ D or ☐ F below; or

C ☐   Payment in monthly installments of not less than 5% of the defendant's monthly gross household income over a period of years to commence__days after the date of this judgment; or

D ☒   Payment of not less than 10% of the funds deposited each month into

4

>    the inmate's trust fund account and monthly installments of not less than 5% of the defendant's monthly gross household income over a period of 10 years, to commence 30 days after release form [sic] imprisonment to a term of supervision; or
>
> E ☒   Payment during the term of supervised release will commence within__(e.g., 30 or 60 days) after release from imprisonment.

....

As in *Martinez*, the combination of the failure to provide for an immediate payment, and the provision for installment payments to "begin," compels the conclusion that only monthly payments were authorized in the judgment. In *Martinez*, this meant that "[a]s long as Mr. Martinez complies with this order, the full restitution amount would not become immediately due. 2015 WL 9009626, at *3. As a result, "the government cannot enforce the restitution order beyond the monthly payment schedule." *Id.* at *4.

In sum, the court finds that the existing garnishment writ cannot be upheld in light of *Martinez*.

The government, however, offers an alternative basis for seizing the pension through garnishment, issued pursuant to 18 U.S.C. § 3664(n) or 18 U.S.C. § 3664(k). Consistent with this additional theory, the government has separately moved (Dkt. 202) for an order requiring Grigsby to turn over the retirement account. The government stresses that Grigsby failed to mention the pension in the financial statement which he signed and gave to the Probation Office on November 28, 2012.

Grigsby has replied to the government's motion by his own Pro-Se Motion for Order (Dkt. 211), asking that the court deny the government's motion for turning over the

retirement account. Grigsby argues that his state court settlement "is still in the process of being resolved." (*Id*. at 1). He contends that the government's actions are "unethical," because his state divorce proceeding is "outside the jurisdiction of the Federal Government's involvement in a criminal case." (*Id*. at 2). And he states he did not disclose the pension because it was "not an asset at that time." (*Id*.)

In the course of sentencing, Grigsby was required to comply with 18 U.S.C. § 3664(d)(3), which provides that criminal defendants subject to restitution provide a full accounting of their finances:

> Each defendant shall prepare and file with the probation officer an affidavit fully describing the financial resources of the defendant, including a complete listing of all assets owned or controlled by the defendant as of the date on which the defendant was arrested, the financial needs and earning ability of the defendant and the defendant's dependents, and such other information that the court requires relating to such other factors as the court deems appropriate.

Although Grigsby now argues that the pension not revealed was not an "asset" because he was not actually drawing benefits at the time of sentencing, it is clear that Grigsby failed to comply with the statute, and misled the court at the time of sentencing. While the statute does provide that a defendant must "includ[e]" in the affidavit, a "listing of all assets" held at the time of the arrest, the information which the defendant must provide is much broader: the defendant must "fully describ[e]" his or her "financial resources" as well as his future "earning ability." The defendant's fully-vested union pension plan was unquestionably a financial resource, and directly affected his earning capacity. But for Grigsby's unjustified and illegal concealment of the pension plan, the

court would have issued an immediate order of full restitution at the time of sentencing.

In the November 28, 2012 affidavit actually submitted by Grigsby, he indicated that he had *nothing* in the way of cash inflows, including under the category of "Pensions /Annuities." (Dkt. 200). The defendant's argument that he was entitled to remain silent about the pension because he was not then receiving benefits is false. The form affidavit further requires defendants to explain any "PROSPECT OF INCREASE IN CASH INFLOWS" in the future. (*Id*. at 3). Grigsby indicated no such prospects, even though he had a fully vested pension account, worth more than $50,000. The defendant was not entitled to remain silent about such a resource, and cannot profit from his fraud.

The court sentenced Grigsby to 260 months incarceration. Based on the affidavit showing zero assets, the court required restitution to the minor victim in the amount of $126,440 and to the minor victim's mother in the amount of $13,560. The court also imposed a $1,000 assessment. To date, Grigsby has paid $176.15 to the Clerk of the Court, leaving outstanding $823.85 unpaid on the assessment, and $140,000 due on the required restitution.

18 U.S.C. § 3664(k) provides:

A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. *Upon receipt of the notification, the court may*, on its own motion, or the motion of any party, including the victim, adjust the payment

schedule, or *require immediate payment in full, as the interest of justice require*.

The court has been notified that the defendant's economic circumstances have changed from what they were at the time of sentencing. For purposes of § 3664(k), a change in a defendant's economic circumstances is material if it substantially affects "his ability to pay restitution." *United States v. Grigsby*, 579 Fed.Appx. 680, 684 (10th Cir. 2014) (citing *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003)). Materiality is determined by "an objective comparison of defendant's financial condition before and after a sentence is imposed." *United States v. Dye*, 48 Fed. Appx. 218, 220, 2002 WL 31245976 (8th Cir. 2002). "Discovery of previously unknown or hidden assets [may] constitute a change in the defendant's economic circumstances that could justify modification under section 3664(k), as it would be a change in the economic circumstances presented to the court at sentencing." *United States v. Roush*, 452 F.Supp.2d 676, 681 n. 6 (N.D. Tex. 2006). *See also United States v. Foreman-Pottinger*, 2009 WL 3347116, *3 n. 1 (E.D. La. Oct. 14, 2009) (no modification under § 3664(k) where "the Government knew all of Foreman-Pottinger's assets during sentencing and has not discovered any previously unknown or hidden assets").[1]

---

[1] The Second Circuit has observed that "a court's latter understanding that it had sentenced a defendant 'without full knowledge of [his] assets'" will not "*alone* constitute a material change in economic circumstances." *United States v. Grant*, 235 F.3d 95, 101 (2d Cir. 2000) (emphasis added). In *Grant*, the district court's order for immediate restitution based upon the subsequent discovery of an inmate account could not be upheld under § 3664(k) where

> the district court made no factual finding that he failed to acknowledge the existence of this asset in connection with the financial disclosure

There can be no question but that the defendant's economic circumstances have changed. At the time sentence was imposed, he had no declared assets and no monthly income. The notice submitted by the government establishes that Grigsby now has a substantial vested pension, and is eligible for benefits.[2] In the interests of justice, the government is entitled to an order for immediate payment in full.

Alternatively, the court determines that immediate payment in full is authorized under 18 U.S.C. § 3664(n). Pursuant to 18 U.S.C. § 3664(n), "If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." While the statute generally is designed to reach any "windfall" received by a person under a restitution requirement, *Roush*, 452 F.Supp.2d at 679, the language of the statute is broad,

---

aspect of his pre-sentence interview.... Because the district court made no finding as to whether Grant concealed or failed to report assets, we do not reach the issue of whether the subsequent discovery of assets concealed by a defendant would constitute a material change in circumstances. *Surely, however, there would be a remedy that would permit the gathering of assets that were unknown to the authorities as the result of a defendant's dishonesty*.

*Id*. (emphasis added).  In the present case, as noted above, the court makes precisely this finding. Grigsby's failure to mention his substantial union pension was deliberate and unjustified. But for that concealment, the court would have required immediate restitution, rather than installment payments, at the time of sentencing.

[2] Notably, other than his claim that the pension was not technically an "asset" at the time of sentencing, Grigsby offers no rationale why an immediate order of restitution is not otherwise proper under § 3664(k).

9

and applies where a defendant obtains "substantial resources" after the initial order of restitution "from any source." Here, Grigsby has now gained access to substantial financial resources which were not previously available to him, and which were concealed from the court. *Cf. United States v. McClanahan*, 2006 WL 1455698, *4 (S.D.W.Va. May 24, 2006) (refusing garnishment of defendant's pension under § 3664(n) in part because"[t]he monthly pension benefits were known at the time of the plea agreement and sentencing").

As the Tenth Circuit noted in its October 29, 2015 Order, the final resolution of the existing garnishment writ remained in abeyance in light of the defendant's various appeals.

> Under 28 U.S.C. § 3205, the district court may enter a final disposition "order directing the garnishee as to the disposition of the judgment debtor's nonexempt interest in such property" only after a writ of garnishment has been issued, the garnishee has responded, and, if requested, the court has conducted a hearing. § 3205(b)(7); *accord United States v. Branham*, 690 F.3d 633, 635 (5th Cir.2012). The district court here has yet to issue a final order directing the disposition of the property; it has merely conducted a hearing and ruled on Mr. Grigsby's objections.

2015 WL 6517880, at *2.

The Garnishee IBEW has filed no answer to the Amended Writ of Garnishment or request for hearing. The court by the present Order and by its Order of February 4, 2015 (Dkt. 156) has resolved all of Grigsby's Objections to the Garnishment. The matter is therefore ripe for a final order of disposition.

Three other motions are before the court. First, Grigsby has separately filed a Motion for Leave to Proceed as Veteran. (Dkt. 190). In this pleading "pursuant to Sup.Ct.R. 40 and 38 U.S.C. § 4323," he asks for leave to proceed without the payment of fees or costs. The

10

court hereby denies the motion. The cited statute excuses filing fees in actions by veterans against State or private employers for employment discrimination or other illegal actions. Grigsby is criminal defendant in a criminal prosecution, and has shown no justification or need for the designation of veteran status.

Second, Grigsby has filed a "Motion for Order to Issue Notice of Docket Entries." (Dkt. 209). He asks that the court clerk be directed to provide him a list of docket entries with special mailing instructions, as well as a transcript of a hearing conducted July 29, 2013. The court denies the motion. The defendant's responsive pleadings indicate that he has been receiving appropriate mailings of all relevant pleadings, and the defendant has shown no basis for the relevance of additional materials or documents.

Grigsby has also moved to stay the forfeiture of other household items, arguing that they should go to his children or his mother, rather than to the United States or his ex-wife. Grigsby filed his motion after the court's entry of its Final Order of Forfeiture (Dkt. 207), and the court denies the motion. First, Grigsby has no standing after the Final Order to contest the forfeiture on behalf of other persons. *See United States v. Lester*, 2012 WL 3068317, *1 (D. Kan. July 26, 2012) (after sentencing and the forfeiture of his interest in property, a defendant "has no standing to participate in the ancillary proceeding" resolving the interests of third parties); *United States v. Weidner*, 2004 WL 432251, *5 (D. Kan. March 4, 2004) ("Defendant has no standing with respect to this ancillary proceeding, and cannot contest forfeiture on the grounds that the subject property is owned by a third party"). Second, as shown in the government's motion (Dkt. 206), all such third parties were

properly notified of the pending forfeiture, and filed no objections. Any such claims are according barred. Consistent with the Preliminary Order of Forfeiture (Dkt. 49), the court duly and properly entered a Final Order of Forfeiture. (Dkt. 207). Grigsby's subsequent motion challenging the forfeiture is accordingly denied.

Finally, Grigsby has filed a Motion asking that the court "issue an order of denial" as to the government's Notice of Change in Economic Circumstances. (Dkt. 201). Grigsby asserts that "the Government's involvement in the state divorce proceeding of Mr. Grigsby and his former spouse, is leading to an ethics question," and asserts that his ex-wife is aware of the pension and "thus does not need to be reminded by the Government." (Dkt. 210, at 1-2).

The defendant's motion is without merit. When a change in a defendant's economic circumstances is discovered, the government is entitled under 18 U.S.C. § 3664(k) to give notice to the court. *See Roush*, 452 F.Supp.2d at 682 (noting "Congress's requirement in section 3664(k) that the government give notice" if assets of defendant "are newly discovered"). In complying with this requirement, the statute also explicitly requires that the government "must certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances." *United States v. Dye*, 48 Fed.Appx. 218, 219 (8th Cir. 2002).

IT IS ACCORDINGLY ORDERED this 16th day of March, 2016, that the defendant's Motion to Cease and Reverse (Dkt. 191) is granted such that the court vacates the existing Amended Writ of Garnishment (Dkt. 124) issued November 4, 2014, but otherwise denied

to the extent that it seeks to preclude the government from "any and all ... debt collection procedures and any other collection process." The defendant's other motions (Dkt. 190, 209, 210, 212) are denied.

The court grants the government's motion (Dkt. 202), seeking an order, pursuant to the All Writs Act, 28 U.S.C.. § 1651(a), resolving the disposition of the IBEW Local No. 661 retirement account of Defendant Grigsby, pursuant to 18 U.S.C. § 3664(n) and/or 18 U.S.C. § 3664(k), and the government shall submit to the court an appropriate Order within ten days.

                                                                     ___s/ J. Thomas Marten_____
                                                                     J. THOMAS MARTEN, JUDGE